UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

| | |
|---|---|
| KRISPY KRUNCHY FOODS, LLC,<br><br>              Plaintiff,<br><br>vs.<br><br>JENNA MARKETING, LLC,<br><br>              Defendant. | Civil Action: 6:20-cv-01424<br><br>**Judge: James D. Cain, Jr.**<br><br>**Magistrate Judge: Patrick J. Hanna** |

**DEFENDANT JENNA MARKETING, LLC'S MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER**

## Table of Contents

                                            **Page**

I. INTRODUCTION ............................................................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND ......................................................1

      A. KKF Attempts To Re-trade and Terminate Its Contracts with Jenna and other Licensees. ...................................................................................................1

      B. The Parties Negotiate; KKF Secretly Files This Anticipatory Suit. .............3

      C. Third Party Witnesses Are in California, Not Louisiana, And This Case Revolves Around Actions and Allegations in California. ....................4

III. LEGAL STANDARD.......................................................................................................5

IV. ARGUMENT: TRANSFER OF THIS CASE TO THE CENTRAL DISTRICT OF CALIFORNIA SHOULD BE GRANTED BECAUSE THE FACTS AND WITNESSES ARE IN CALIFORNIA ............................................6

      A. KKF Could Have Filed This Case in the Central District of California ...................................................................................................................6

      B. There Is No Forum Selection Clause. ...................................................................6

      C. The Private-Interest Factors Heavily Favor Transfer to the Central District of California. .............................................................................................7

            1. The Sources of Proof Are in California. .........................................7

            2. No Compulsory Process Exists Over Relevant Third-Party Witnesses In This District. ..............................................................9

            3. Costs and burdens for willing witnesses are significantly less in California than this District. ..........................................................9

      D. The Public-Interest Factors Favor Transfer to the Central District of California. .............................................................................................................11

            1. California Has A Strong Local Interest In This Case. ...................11

            2. The Fourth Public Interest Factor, "Court's Familiarity With The Controlling Law" Supports Transfer. ......................................12

            3. The Remaining Public Interest Factors Are Neutral At Worst. ......12

      E. The First to File Rule Does Not Weigh Against Transfer Because This Is an Anticipatory Suit, and Because the §1404 Factors Favor Transfer. ...............................................................................................................13

V. CONCLUSION................................................................................................................14

## Table of Authorities

**Page**

Cases

*Admiral Insurance Company v. Dual Trucking, Inc.*
    WL 2526952 (E.D. La., May 18, 2020)............................................1, 6, 8, 9

*Atlantic Natural Foods, LLC v. Chipotle Mexican Grill, Inc.*
    WL 8265343 (E.D. La., Nov. 5, 2020) ......................................................14

*BMTP, LLC v. RBH, Inc.*
    WL 407409 (M.D. La., Jan. 31, 2019).........................................................8

*Capitol Records, Inc. v. Optical Recording Corp.*
    810 F.Supp. 1350 (S.D.N.Y. 1992) ...........................................................14

*Cf.*, *Rembrandt Vision Techs., L.P. v. Johnson & Johnson* Vision *Care, Inc.*
    WL 2937365 (E.D. Tex. July 19, 2011) ....................................................13

*Deshotel v. CardCash Exchange Inc.*
    WL 5807609 (W.D. La., Sept. 29, 2020).....................................................7

*Deshotel v. PayPal, Inc.*
    WL 5813322 (W.D. La., Aug. 24, 2020).....................................................7

*Godo Kaisha IP Bridge 1 v. Xilinx, Inc.*
    WL 4076052 (E.D. Tex. Sept. 14, 2017).....................................................9

*Gulf Oil Corp. v. Gilbert*
    330 U.S. 501 (1947) ..................................................................................11

*Harris v. McDonnell*
    WL 5720355 (W.D. Va. Oct. 13, 2013).....................................................14

*Hendrickson v. Octagon Inc.*
    225 F.Supp.3d 1013 (N.D. Cal. 2016) ......................................................12

*In re Genentech, Inc.*
    566 F.3d 1338 (Fed. Cir. 2009).................................................................10

*In re Hoffmann-La Roche Inc.*
    587 F.3d 1333 (Fed. Cir. 2009)............................................................11, 12

*In re Nintendo Co.*
    589 F.3d 1194 (Fed. Cir. 2009).................................................................5, 9

*In re TS Tech. USA Corp.*
    551 F.3d 1315 (Fed. Cir. 2008)...............................................................9, 10

*In re Volkswagen AG*
    371 F.3d 201 (5th Cir. 2004) ....................................................5, 6, 10, 11

*Jones v. GNC Franchising, Inc.*
    211 F.3d 495 (9th Cir. 2000) ....................................................................12

*Macedonia Distributing, Inc. v. S-L Distribution Co., LLC*
    WL 6190592 (C.D. Cal. Aug. 7, 2018).....................................................12

## Table of Authorities

**Page**

*O'Quin v. Financial Services Online, Inc.*
   WL 5316360 (M.D. La., Oct. 26, 2018) ...................................................... 10

*Optimum Power Solutions LLC v. Apple, Inc.*
   794 F.Supp.2d 696 (E.D. Tex. 2011) .......................................................... 5

*Promote Innovation LLC v. Ortho-McNeil Pharm., LLC*
   WL 13224919 (E.D. Tex. Jan. 12, 2011) .................................................... 10

*Quesenberry v. Volvo Grp. N. Am., Inc.*
   WL 648658 (W.D. Va. Mar. 10, 2009) ....................................................... 14

*Riviera Trading Corp. v. Oakley, Inc.*
   944 F.Supp. 1150 (S.D.N.Y. 1996) ............................................................ 14

*Romac Environmental Services, LLC v. Wildcat Fluids, LLC*
   WL 7371115 (W.D. La., Sept. 16, 2020)
   WL 7379918 (W.D. La., Dec. 15, 2020) ..................................................... 7

*Stez v. J. Heinz Company*
   WL 5020573 (N.D. Cal. Dec. 9, 2014) ....................................................... 15

**Statutes**

28 U.S.C. §1404 ..................................................................................... passim

Cal. Bus. & Prof. §16600 ........................................................................ 11, 12

Fed. R. Civ. P. 12 ........................................................................................ 1

I. **INTRODUCTION**

This is a case about KKF franchises in and around California, alleged complaints by a California customer about Defendant Jenna Marketing, LLC (a California LLC) for its actions in California, and California practices more generally. There are no contracts with a Louisiana choice of forum clause. With nearly all third-party witnesses, activities, key state interests, and parties in California, and with key California statutes possibly being implicated as well, California has a strong local interest in overseeing this case. *See Admiral Insurance Company v. Dual Trucking, Inc.* (E.D. La., May 18, 2020, No. CV 20-383) 2020 WL 2526952, at *8 (transferring where factfinding about operations in another state was central to the claim). Because the private and public factors all support transfer, this Court should transfer the case to the Central District of California under 28 U.S.C. §1404(a).[1]

II. **FACTUAL AND PROCEDURAL BACKGROUND**

The facts alleged in the complaint here are quite thin. Basically, the Complaint alleges that at some unspecified time (though in fact beginning *four years ago*) KKF decided it wanted to renegotiate its deal. Complaint ¶ 15-17. It further alleges that at some equally unspecified time (in fact *three years ago*) a "major, national customer" (a Circle K employee in California) complained about Jenna. Complaint ¶ 18-19. The remainder of the complaint just sets out the statutory elements of dissolution and declaratory relief with no explanation. Complaint ¶¶ 27-45. Thus, explanation is in order. The longer story is laid out below, and was also laid out in Jenna's own complaint against KKF.

  A. **KKF Attempts To Re-trade and Terminate Its Contracts with Jenna and other Licensees.**

Over the course of their nearly ten-year relationship, Jenna, through its principal, Harry Markowitz ("Markowitz"), has been the most successful and lucrative "marketing partner" of KKF.[2] (RFJN Ex. 1 (Compl.) at ¶¶ 12, 14, 16, 23-28.) Under

---

[1] KKF also fails to state a claim, as set forth in the concurrently filed Rule 12(b)(6) motion. This motion should be addressed first.

[2] KKF designates as "marketing partners" the third-party entities with whom KKF entered contracts for the sale and marketing of Krispy Krunchy brand products and

1

Markowitz's leadership, sales of the Krispy Krunchy brand[3] grew by millions of dollars in sales territories controlled by Jenna. (*Id.* at ¶¶ 23-28.) For example, revenues of Krispy Krunchy brand products in the State of California increased by approximately $19.5 million during the six-year period in which Jenna operated in that territory. (*Id.* at ¶ 25.) In large measure, the success of KKF has derived from Markowitz's hard work and enterprise, including his recruitment of profitable customers such as Circle K, Chevron, and Sierra Energy for the brand.[4] (*Id.* at ¶ 23.)

Despite the mutual successes of KKF and Jenna, the genesis of this dispute lies in post-hoc changes made by KKF to the peculiar structure it chose for its business. On October 5, 2011, KKF and Jenna entered into the contract entitled, "Agreement and Consent to Admission of Assignee Jenna Marketing, LLC, as a New Member" (the "Agreement"). (*Id.* at ¶ 16; *see also* Markowitz Dec. Ex. E.) Under the Agreement, KKF and Jenna agreed to co-own a newly formed entity, Krispy Krunchy Foods – Los Angeles, LLC ("KKF-LA"), later re-named KKF-California, and divide profits from Jenna's marketing and sale of Krispy Krunchy products in its sales territory through KKF-California. (*Id.* at ¶¶ 16, 18-21.) Jenna alleges KKF structured its business with all its third-party marketing partners similarly up until early 2015. (*Id.* at ¶¶ 11, 30.) There is no forum selection clause in the Agreement. Markowitz Dec. Ex. E, generally.

In early 2015, KKF began to insist its marketing partners enter into new, one-sided contracts with KKF, which included minimum sales requirements and permitted KKF to terminate a marketing partner without compensation for its territory. (*Id.* at ¶ 30.) Those marketing partners who entered the new contracts were quickly terminated

---

shared revenue through their co-ownership in subsidiary limited liability companies. (*Id.*. at ¶ 11.)
[3] Krispy Krunchy Chicken is a brand of fried chicken sold at convenience stores and gas stations.
[4] A list of witnesses, which includes the above-mentioned clients of KKF-LA, is attached as Exhibit D of the Declaration of Harry Markowitz. The basis for KKF's trumped up Louisiana lawsuit is a claim that a California customer has a complaint about Jenna's actions in California in connection with Circle K, a false claim that is rebutted by other California representatives from that chain. (*See* Declaration of Harry Markowitz ("Markowitz Decl.") at ¶ 8.)

2

by KKF, while marketing partners who refused were threatened with the loss of their territories that extended beyond the four-corners of their original contracts. (*Id.* at ¶¶ 31-34.)

      **B.**    **The Parties Negotiate; KKF Secretly Files This Anticipatory Suit.**

In March of 2017 (four years ago), Jeanne Cullen ("Cullen"), a principal and then-General Counsel of KKF, contacted Markowitz demanding that Jenna enter such a new contract. (*Id.* at ¶ 36.) Prudently, Markowitz recognized the risk that the offer posed to his business and declined. (*Id.*) KKF and Jenna again attempted to negotiate a deal throughout the end of 2019 and 2020. (*Id.* at ¶ 38; *see also* Russ Decl. at ¶ 2.) KKF proposed new terms in an agreement entitled, "Non-Disclosure Confidentiality Agreement Concerning Discussions for a Services Agreement for the California, Oregon, Washington, Arizona, and Parts of Nevada Territories" (the "NDA"), which was rejected by Jenna. (*Id.* at ¶ 4.)

During those negotiations, Jenna repeatedly threatened to initiate an action against KKF if reasonable terms were not proposed or if the New Member Agreement was terminated. Accordingly, Jenna expressly rejected a provision of the NDA requiring the parties to "agree to the fullest extent permitted by law that [they] will not commence any action, litigation, or proceeding of any kind" and selecting the law of Louisiana to govern any dispute. (Russ Decl., Ex. A at ¶ 12.) Jenna again indicated litigation would be initiated if a satisfactory agreement was not reached on April 13, 2020. (*See* Russ Decl. at ¶ 5; *see also id.* at Ex. B (email from L. Russ to J. Cullen, dated April 13, 2020 at 2:41 PM).) On June 8, 2020, Jenna informed KKF that if it "attempt[ed] to terminate Jenna, there will be litigation." (Russ Decl. at ¶ 6; *see also id.* at Ex. C (email from L. Russ to J. Cullen, dated June 8, 2020 at 9:52 AM).) Indeed, Jenna threatened litigation against KKF if it continued to propose unreasonable offers up to and including November 4, 2020. (*See* Russ Decl. at ¶ 7.)

Upon receiving those threats of litigation, and in the middle of negotiations, KKF filed the complaint in *Krispy Krunchy Foods, LLC v. Jenna Marketing LLC*, Case No. 6:20-cv-01424-JDC-PJH (W.D. La. Nov. 4, 2020), without notifying Jenna or its

3

counsel and without serving the same. (Russ. Decl. at ¶¶ 8, 10.) KKF also attempted to terminate the New Member Agreement on the same day. (*Id.* at ¶ 9.) Indeed, Jenna only became aware of the action against it on November 10, 2020, when an attorney referral service informed Markowitz of that complaint. (Russ Decl. at ¶ 10; Markowitz Decl. at ¶ 5.) During the interim between the filing of this action and Markowitz learning of it, the parties entered into an LOI. After KKF attempted to add new terms to the long-form, the negotiations collapsed. Russ Dec. ¶ 14.

On November 17, 2020, Jenna filed the now-pending action in the Central District of California, thirteen (13) days after the complaint in the Louisiana lawsuit was filed and seven (7) days after Jenna became aware of the same.

A note on case timing. Although KKF *filed* its case on November 4, 2020, it did not *serve* it until December 31, 2020. Doc. 5 at 1. In contrast, Jenna served its complaint almost immediately. As such,[5] despite being nominally the "first filed" case, according to KKF, the motion practice in *this* case is about a month behind the motion practice in the California case. Due to this sequencing, KKF's own motion to dismiss, arguing basically that this court should decide where the case is heard, has been fully briefed, and is currently set to be heard[6] on February 22, 2021.

### C. Third Party Witnesses Are in California, Not Louisiana, And This Case Revolves Around Actions and Allegations in California.

As stated in KKF's complaint, other than party negotiations, the key issue in this case is an assertion that "one of KKF's major, national customers notified KKF that the customer was dissatisfied with Markowitz." Complaint ¶ 18. Although not expressly stated in the Complaint, this appears to refer to a discussion with Jantra Oswald, a California Circle K employee. In early 2018, Mr. Markowitz and Ms. Oswald had a short-lived dispute over Circle K/Jenna relations. However, that dispute resolved itself by the middle of 2018, and is long-since stale. Markowitz Dec. ¶ 8.

---

[5] The parties in both cases agreed to extensions of time to respond, but those don't affect the basic sequence.
[6] Due to COVID-19, Judge Selna does not hold civil motion hearings, but generally issues decisions on the date of the scheduled hearing.

4

In addition, the overwhelming majority of third-party witnesses with knowledge of KKF-California's activities are in California. The bulk of the remainder are in in neighboring states. Markowitz Decl. Ex. D.

### III. LEGAL STANDARD

Section 1404(a) allows a district court to transfer any civil action to any other district or division where the action might have been brought for the convenience of the parties and witnesses and in the interest of justice. *See* 28 U.S.C. §1404(a). To determine whether to grant a motion to transfer under Section 1404(a), the Court should balance the private convenience interests of the parties and the public interest in the fair and efficient administration of justice—*i.e.*, the "private" and "public" interest factors. *See, e.g., In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004); *In re Nintendo Co.,* 589 F.3d 1194, 1197 (Fed. Cir. 2009).

"The first inquiry when analyzing a case's eligibility for 1404(a) transfer is 'whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed.'" *Optimum Power Solutions LLC v. Apple, Inc.*, 794 F.Supp.2d 696, 700 (E.D. Tex. 2011) (citations omitted). "Once that threshold inquiry is met, courts analyze both public and private factors relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case." *Id.*

The private factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and 4) all other practical problems that make trial of a case easy, expeditious, and inexpensive. *Id*.

The public factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. *Id.*

"The plaintiff's choice of venue is not a factor in this analysis." *Id.* "Rather, the plaintiff's choice of venue contributes to the defendant's burden in proving that the

5

transferee venue is 'clearly more convenient' than the transferor venue." *Id*. (quoting *In re Volkswagen of Am., Inc*., 545 F.3d 304, 315 (5th Cir. 2008)). *See also Admiral Insurance Company v. Dual Trucking, Inc. (*E.D. La., May 18, 2020, No. CV 20-383) 2020 WL 2526952, at *8 (stating same).

## IV. ARGUMENT: TRANSFER OF THIS CASE TO THE CENTRAL DISTRICT OF CALIFORNIA SHOULD BE GRANTED BECAUSE THE FACTS AND WITNESSES ARE IN CALIFORNIA

### A. KKF Could Have Filed This Case in the Central District of California.

The threshold inquiry under §1404(a) is satisfied here because KKF could have brought its claims against Jenna in the Central District of California. Because Jenna is a California LLC based in Los Angeles, personal jurisdiction would be easily satisfied. Subject matter jurisdiction would exist because the parties are diverse and the claims are worth more than $75,000.00. Because this action could have been brought in the Central District of California, the transfer analysis turns on weighing the private and public interest factors.

### B. There Is No Forum Selection Clause.

Although not a standalone factor in a *forum non conveniens* analysis, it is worth briefly addressing the lack of a forum selection clause here. Many §1404 cases in this district,[7] and more generally, involve a forum selection clause that essentially short-circuits the private-interest analysis, and often displaces the public interest analysis as well. *See, e.g. Romac Environmental Services, LLC v. Wildcat Fluids, LLC* (W.D. La., Sept. 16, 2020, No. CV 6:20-00581) 2020 WL 7371115, at *2, report and recommendation adopted (W.D. La., Dec. 15, 2020, No. CV 6:20-00581) 2020 WL 7379918 ("When a motion to transfer venue involves a valid mandatory forum selection clause, the court is to conduct a modified analysis under §1404(a), wherein the forum selection clause is to be "given controlling weight in all but the most exceptional cases"); *Deshotel v. PayPal, Inc*. (W.D. La., Aug. 24, 2020, No. CV 6:19-0373) 2020 WL 5813322, at *4, *report and recommendation adopted sub nom.*

---

[7] The majority of the 2019 and 2020 *forum non conveniens* cases decided by Louisiana federal courts and available on Westlaw involved forum selection clauses.

6

*Deshotel v. CardCash Exchange Inc.* (W.D. La., Sept. 29, 2020, No. 19-CV-373) 2020 WL 5807609. The §1404 analysis looks very different in the presence of such a clause. *Id.* These cases need not be addressed in any depth here, but it bears emphasizing that the agreement here does not contain a forum selection clause, so the actual private interest factors, especially witness convenience, must be addressed directly.

    C.    **The Private-Interest Factors Heavily Favor Transfer to the Central District of California.**
          1.    **The Sources of Proof Are in California.**

This case revolves around allegations about Jenna's actions in California. A key stated reason for this case, according to the complaint, is:

> one of KKF's major, national customers notified KKF that the customer was dissatisfied with Markowitz. The customer further informed KKF that it was considering terminating its relationship with KKF unless Markowitz was removed entirely from the customer's busines relationship with KKF, so that the customer and its employees would never have to deal with Markowitz again.

Complaint ¶ 18-19.

As an initial matter, Jenna disputes there is an issue with the major national customer, which appears to be Circle K. Markowitz Dec. ¶ 8. The relevant issue was a narrow dispute with a single regional Circle K employee in California that did not threaten any broader relationship with the chain. But for purposes of this motion, the important point is that the employee at issue, Jantra Oswald, is a California resident subject to service of process in California; she is based in Sacramento. Likewise, the overwhelming majority of Jenna's Circle K contacts are likewise located in California; they would be called to rebut any such claims. Markowitz decl. ¶ 8 and Ex. D.

In other words, KKF alleges that KKF-California needs to be dissolved because Jenna allegedly is destroying customer relationships in California, and that for the same reason KKF-Phoenix needs to go.[8] That's mere pretext, but in order for KKF to attempt

---

[8] That's not the real reason KKF is suing, but proving the truth will also revolve around California witnesses.

7

to prove its case, and Jenna to rebut it, the overwhelming majority of the third-party witnesses and documents are in California, and the remainder are in neighboring states.[9]  Where, as here, the sources of proof are in another state, Louisiana federal courts routinely transfer to the appropriate district.  *Admiral Insurance Company v. Dual Trucking, Inc.* (E.D. La., May 18, 2020, No. CV 20-383) 2020 WL 2526952, at *8 ("Determining whether these exclusions apply requires factfinding relating to DTI and DTT's Montana operations.  The sources of proof for these factual issues are in Montana, as are the witnesses who can testify to these issues.  A federal court in Montana can issue subpoenas to witnesses in Montana, and attendance would be much less costly and more convenient for witnesses.").

In other words, either Jenna has sufficiently abrogated its responsibilities in California sufficiently to justify dissolution, or it hasn't.  But the answer to that question lies in California, and to a lesser extent in neighboring states, not Louisiana.  Likewise, where, as here, the purported conduct occurred in another state, transfer is warranted under these circumstances because that is where the proof will be found, even if the 'harm' is felt by KKF in Louisiana.  *BMTP, LLC v. RBH, Inc*. (M.D. La., Jan. 31, 2019, No. CV 18-352-SDD-RLB) 2019 WL 407409, at *5 ("While it is clear that harm has been felt in Louisiana as a result of Defendants' alleged conduct, all conduct of which Plaintiff complains occurred in the Northern District of Alabama.").  The vast majority of evidence in this case is located in California, so this factor weighs strongly in favor of transfer.  *See In re TS Tech. USA Corp.*, 551 F.3d 1315, 1321 (Fed. Cir. 2008) (transferring the case due to "the vast majority of identified witnesses, evidence, and events leading to this case involv[ing]" the transferee venue).

In addition, much of the alleged evidence will likely come from Jenna.  *See Nintendo*, 589 F.3d at 1199; *Godo Kaisha IP Bridge 1 v. Xilinx, Inc.*, No. 2:17-CV-00100-JRG-RSP, 2017 WL 4076052, at *3 (E.D. Tex. Sept. 14, 2017) (location of a party's headquarters in the transferee venue favors transfer as that is where the bulk of

---

[9] Jenna's territory includes Oregon, Nevada and Arizona, and Circle K is based in Arizona.

8

the discovery is presumably located). That evidence is almost 1,800 miles away from the forum.

### 2. No Compulsory Process Exists Over Relevant Third-Party Witnesses In This District.

Because the key third party witnesses with knowledge of the purported issues with KKF are located in California, this second private interest factor also weighs heavily in favor of transfer. Employees of Circle K in California (including Ms. Oswald) and other California customers of KKF-LA will be key third-party witnesses. *Admiral* Insurance *Company v. Dual Trucking, Inc.* (E.D. La., May 18, 2020, No. CV 20-383) 2020 WL 2526952, at *8 ("Determining whether these exclusions apply requires factfinding relating to DTI and DTT's Montana operations. The sources of proof for these factual issues are in Montana, as are the witnesses who can testify to these issues). In sum, *more than 60* KKF-LA customers are located within the subpoena power of the Central District of California, but not within the reach of this District. Markowitz dec. Ex. D. In contrast, it does not appear from the Complaint that *any* third-party witnesses are located in Louisiana.

The remaining third parties are in states neighboring California. Since either court would lack subpoena power over these witnesses, their relevance to this factor is neutral. "The fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer, and not only slightly." *In re Genentech, Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009). This factor thus strongly favors transfer.

### 3. Costs and burdens for willing witnesses are significantly less in California than this District.

Litigating this case in California will decisively reduce the costs and burdens to willing witnesses of both parties. "The convenience of the witnesses is probably the single most important factor in transfer analysis." *Genentech,* 566 F.3d at 1343 (emphasis added).

"Additional distance [from home] means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional

9

travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment." *Volkswagen,* 545 F.3d at 317; *O'Quin v. Financial Services Online, Inc.* (M.D. La., Oct. 26, 2018, No. CV 18-36-JWD-RLB) 2018 WL 5316360, at *14 (granting transfer where willing witnesses were located in the transferee state). Because the distance between the venues is "more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled." *Volkswagen,* 545 F.3d at 317.

Jenna is not aware of any potential witnesses in or near Louisiana other than Ms. Cullen, who is a party witness. Conversely, the overwhelming majority of witnesses likely to provide documents, testimony, and other evidence in the United States are located in the California or neighboring states. *See, supra,* § C.1-2.; *see also Promote Innovation LLC v. Ortho-McNeil Pharm., LLC,* No. 2:10-cv-109-TJW, 2011 WL 13224919, at *5 (E.D. Tex. Jan. 12, 2011) (finding this factor in favor of transfer where more witnesses would be inconvenienced by traveling to the Eastern District of Texas than to the transferee venue.). California is about 1,800 miles from Lafayette, and this distance would work a significant hardship on Jenna's witnesses located in California. *See In re TS Tech*, 551 F.3d at 1320 (quoting *In re Volkswagen*, 371 F.3d at 205) ("It goes without saying that '[a]dditional distance [from home] means additional travel time; additional travel time increases the probability for meal and lodging expenses; and additional travel time with overnight stays increases the time which these fact witnesses must be away from their regular employment.'"). Thus, applying the 100-mile rule weighs heavily in favor of transfer.

California is also convenient for KKF, as its members are distributed throughout the Country, and Los Angeles International Airport has non-stop flight to most major cities. Complaint ¶ 1.

In considering the convenience of all potential witnesses and the cost of attendance for such witnesses at trial, the third private interest factor weighs in favor of transfer.

The fourth private interest factor is essentially a catchall that does not impact this analysis. But because this case arises out of actions and allegations in California, in the absence of a forum selection clause, the private interest factors favor transfer.

### D. The Public-Interest Factors Favor Transfer to the Central District of California.
#### 1. California Has A Strong Local Interest In This Case.

The Central District of California's interest in this case is compelling. Because the issues in this case are (1) the conduct and alleged complaints of California customers; (2) the relationship between KKF's contracts and California Franchise Law; and (3) California non-competition law (B&P §16600), this case "calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009);

"The Supreme Court has determined that '[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation.'" *In re Volkswagen*, 371 F.3d at 206 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947)). Fundamentally, what KKF is seeking is to do is terminate franchises in California and prevent competition in California, based on actions in California. As stated above, there are no apparent sources of proof in Louisiana relating to KKF's claims against Jenna and this case is not otherwise connected to Louisiana. Thus, requiring people of the Western District of Louisiana to serve as jurors in this matter would be unduly burdensome to them.

Substantively, "California has a 'strong public policy' protecting California franchisees from litigating in a non-California venue." *Macedonia Distributing, Inc. v. S-L Distribution Co., LLC*, No. SACV 17-1692-JVS-KESx, 2018 WL 6190592, at *4-8 (C.D. Cal. Aug. 7, 2018) (declining to enforce forum selection clause) (quoting *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000)). This public policy is consistent with and buttressed by California's protective policies against restraints of lawful businesses. *See* Cal. Bus & Prof. Code §16600; *Hendrickson v. Octagon Inc.*,

225 F.Supp.3d 1013, 1025 (N.D. Cal. 2016) (noting that §16600 is the "fundamental policy" of California and declining to apply other state's law). Although this case is narrower than the California case, it may at the very least touch on these areas of law.

The Central District of California clearly has an interest in the matter, as it seeks to regulate operations in California. Therefore, this second public interest factor militates in favor of transfer. *See In re Hoffmann-La Roche Inc.*, 587 F.3d at 1338 (internal citations omitted) ("[I]f there are significant connections between a particular venue and the events that gave rise to a suit, this factor should be weighed in that venue's favor.").

    **2.**    **The Fourth Public Interest Factor, "Court's Familiarity With The Controlling Law" Supports Transfer.**

Although this case is far narrower than the California case, it is likely that California franchise and non-competition law will be controlling, in addition to Louisiana LLC dissolution law. Since there are both Louisiana and California statutes at play, a court will need to get up to speed regardless. The volume of law on Louisiana LLC Dissolution (which itself tracks model laws) is far smaller than the volume of law on California franchise and non-competition law (which does not). Jenna respectfully submits that it will be simpler for a court in California to get up to speed on dissolution law, than for a court in Louisiana to learn California franchise and non-competition law. This factor thus at least somewhat favors transfer.

    **3.**    **The Remaining Public Interest Factors Are Neutral At Worst.**

The first and third public interest factors, "Administrative Issues Related to Congestion," and the "Potential Conflict of Law Issues," are neutral. *Cf.*, *Rembrandt Vision Techs., L.P. v. Johnson & Johnson* Vision *Care, Inc.*, No. 2:09-cv-200-TJW, 2011 WL 2937365, at *3-4 (E.D. Tex. July 19, 2011) (order granting motion to transfer venue). For the first factor, "the administrative difficulties flowing from court congestion . . .," this Court has previously held that "[g]iven the speculative nature of this factor, the Court finds it to be neutral." *Id.* at *3.

The large majority of the relevant factors in the analysis strongly favor transfer and the remaining factors are neutral. No factor weighs against transfer. Thus, the Central District of California is "clearly more convenient" and transfer is warranted under 28 U.S.C. §1404(a). *See Rembrandt,* 2011 WL 2937365, at *4 (ordering a case transferred to a "clearly more convenient" forum since "the relative ease of access to sources of proof and the availability of compulsory process to secure the attendance of witnesses weight [sic] slightly in favor of transfer, and the cost of attendance for willing witnesses and local interest weigh in favor of transfer" and since "[n]o factors weigh against transfer and all other factors are neutral").

  **E. The First to File Rule Does Not Weigh Against Transfer Because This Is an Anticipatory Suit, and Because the §1404 Factors Favor Transfer.**

In opposition, KKF may argue it is the first to file and that as such, the motion should be denied. The filing sequence does not impact the assessment here for two reasons.

First, as set forth above and below, the private and public factors under §1404 are independent of first-filed issues. Even if there were no case in California, this motion would be well taken for the reasons set forth here. The witnesses to the issues *described in KKF's complaint* are in California, and subject to proof there, but not here. Filing sequence is, to some extent, a red herring;[10] the motion should be granted because it succeeds on the merits.

Second, and independently, this case is an anticipatory suit. The parties were negotiating under the threat of litigation in California when, over a 24-hour period, KKF attempted to "switch" the litigation threat to Louisiana and then immediately filed this suit. California Complaint ¶ 39. Where, as here, a lawsuit is filed under the threat of litigation, the first to file rule does not apply. As at least one federal court in this state has held, "a "party filling suit in anticipation of a suit in another forum should not

---

[10] In the briefing in the California case, the key area of dispute was whether, as the technically second-filed court, the Court in California could even assess §1404 issues or anticipatory suit issues in the first place. No such issue applies here, and as a practical matter, there is likely to be movement of some sort on that motion before the reply is due here.

13

be rewarded for what amounts to forum shopping." *Atlantic Natural Foods, LLC v. Chipotle Mexican Grill, Inc.* (E.D. La., Nov. 5, 2020, No. CV 20-2280) 2020 WL 8265343, at *5. In *Atlantic Natural,* as here, the parties were negotiating under the threat of litigation in California, and the plaintiff attempted to jump the gun by filing a lawsuit in Louisiana. There, as here, the Louisiana lawsuit was anticipatory and subject to transfer to the Central District of California. To the extent KKF attempts to argue it is the first-filed lawsuit,[11] this Court should follow *Atlantic Natural* and grant the motion.

## V.     CONCLUSION

For the foregoing reasons, Jenna respectfully requests that the Court transfer the claims against it to the Central District of California for the convenience of the parties and to promote the interests of justice.

Respectfully submitted,

DATED:  February 11, 2021

/s/ Nathan Meyer
Larry C. Russ (*pro hac vice*)
Jules L. Kabat (*pro hac vice*)
Nathan D. Meyer (*pro hac vice*)
Timothy M. Baumann (*pro hac vice*)
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California 90025
Telephone: (310) 826-7474
Facsimile: (310) 826-6991
lruss@raklaw.com
jkabat@raklaw.com
nmeyer@raklaw.com
tbaumann@raklaw.com

---

[11] The cases are also sufficiently close in time (indeed, the California case is now ahead of this case) that the interests of a first-filed lawsuit are greatly reduced, to the extent they apply at all. *See, e.g., Harris v. McDonnell*, No. 5:13-cv-00077, 2013 WL 5720355, at *2, 4 (W.D. Va. Oct. 13, 2013) (declining first-to-file rule when complaints were filed two weeks apart); *Quesenberry v. Volvo Grp. N. Am., Inc.*, No CIV.A. 1:09CV00022, 2009 WL 648658, at *4 (W.D. Va. Mar. 10, 2009) (declining first-to-file rule when complaints were filed three weeks apart); *Riviera Trading Corp. v. Oakley, Inc.*, 944 F.Supp. 1150, 1159 (S.D.N.Y. 1996) (not applied when four days separated the filing of the complaints); *Capitol Records, Inc. v. Optical Recording Corp.*, 810 F.Supp. 1350, 1352 (S.D.N.Y. 1992) (not applied when twenty (20) days separated filings); *see also Stez v. J. Heinz Company*, No. C 14-1871-PJH, 2014 WL 5020573, at *3 (N.D. Cal. Dec. 9, 2014) (rejecting application of first-to-file rule in part because the first case was filed "only a little over five weeks prior").

14

**Adams and Reese, LLP**

Mark Beebe (#19478)
Kellen J. Mathews (#31860)
Grant Guillot (#32484)
Taylor M. LeDuff (#39253)
450 Laurel Street, Suite 1900
Baton Rouge, LA  70801
Telephone:  225.366.5200
Facsimile:  225.336.5220
mark.beebe@arlaw.com
kellen.mathews@arlaw.com
grant.guillot@arlaw.com
taylor.leduff@arlaw.com

*Attorneys for Defendant
Jenna Marketing, LLC*

## CERTIFICATE OF SERVICE

      I certify that counsel of record who are deemed to have consented to electronic service are being served on February 11, 2021, with a copy of this document via the Court's CM/ECF systems.  Any other counsel will be served by electronic mail, facsimile, overnight delivery and/or First Class Mail on this date.

*/s/ Nathan D. Meyer*
Nathan D. Meyer
