# EXHIBIT A

CONFIDENTIAL

# NON-DISCLOSURE CONFIDENTIALITY AGREEMENT CONCERNING DISCUSSIONS FOR A SERVICES AGREEMENT FOR THE CALIFORNIA, OREGON, WASHINGTON, ARIZONA AND PARTS OF NEVADA TERRITORIES

This NON-DISCLOSURE CONFIDENTIALITY AGREEMENT (the "Agreement"), effective as of February 26, 2020 is by and between Krispy Krunchy Foods, LLC, with its offices at 1600 Harris Street, Alexandria, LA, 71306 and on behalf of any/all of its affiliated companies and/or approved agents and representatives (hereinafter "KKF"), Harry Markowitz and Jenna Marketing, LLC and on behalf of any/all of their affiliated companies and/or approved agents and representatives (collectively with Harry Markowitz, "Jenna"), with their offices at 6627 West Olympic Boulevard, Los Angeles, CA 90048, each individually a "Party" and collectively, the "Parties." ¶ The Parties currently disagree about the nature and scope of their Agreement. In an effort to resolve this dispute, are in ~~In connection with~~ the Parties' discussions about entering into a ~~certain~~ new Services Agreement for servicing the states of California, Oregon, Washington, Arizona, and parts of Nevada ("Proposed Services Agreement"), governing the Parties' business relationship, as well as the disclosure of the terms and provisions of the Proposed Services Agreement themselves, KKF may be disclosing certain of their confidential, proprietary and trade secret information (defined below) which it desires to be kept confidential by the terms of this Agreement. The purpose of this Agreement is to set forth the terms pursuant to which KKF will furnish to Jenna the Proposed Services Agreement and other KKF Confidential Information (defined below) for purposes of the Parties executing the Proposed Services Agreement. In consideration of receiving the Proposed Services Agreement and engaging in discussions with KKF and being provided with KKF Confidential Information (defined below), and other valuable consideration, which the Parties agree they have received, the Parties hereby agree to this Agreement, as follows:

1. "Affiliated Companies" or "Affiliates" shall mean in relation to any Party, companies that directly or indirectly through one or more intermediaries, control, or are controlled by, or are under common control with such Party, and the term "control" (including the terms "controlling", "controlled by" and "under common control with") means the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a company, partnership, or other body corporate, whether through the ownership of voting securities, by contract or otherwise.

2. "KKF Confidential Information" shall mean and include any information, material or data which is provided by or on behalf of KKF or their agents, employees or Affiliated Companies to Jenna or their agents, employees or Affiliated Companies in any form, whether oral, written, visual, electronic, or tangible, and all copies thereof, together with all portions of any documents, notes or other summaries prepared by or for Jenna which contain or reflect any proprietary, trade secret, confidential information, or other proprietary information or materials; including without limitation, the Proposed Services Agreement and their terms and conditions, any data contained within the Proposed Services Agreement or serving as a basis for the Proposed Services Agreement's terms, the subject of any discussions relating to the Proposed Services Agreement, the fact that discussions between Parties regarding the Proposed Services Agreement are taking place, ideas, research and development, know-how, techniques, technical data, designs, samples, drawings, specifications, recipes or ingredient combinations, vendor information and lists, current and potential technology information and lists, pricing and cost information, relationships with vendors, suppliers or manufacturers, employee lists, information obtained from

- 1 -

CONFIDENTIAL

previous or current participants in programs by KKF, business and marketing plans, strategies and proposals, financial information and forecasts, merchandising and marketing plans, inventions, formulae related to the current, future, and proposed products and services of KKF, and all other KKF information whether or not such information is marked "Confidential" or "Proprietary." KKF Confidential Information shall be considered as such at the time of transmittal.

3. KKF believes and Jenna hereby agrees that KKF Confidential Information has significant commercial value that would be diminished by unauthorized disclosure. Accordingly, the commitments of confidentiality in this Agreement by Jenna are a condition to KKF's willingness to disclose and engage in the contemplated business discussions, planning, an ongoing business relationship, and desire to enter into the Proposed Services Agreement with Jenna. Jenna agrees that they shall not use any advantages derivable from such KKF Confidential Information in their own business or affairs, unless the same is done pursuant to the terms of the executed Proposed Services Agreement with all other signatories to this document.

4. Jenna agrees that when receipt of KKF Confidential Information has occurred:

(a) Jenna shall not disclose or communicate KKF Confidential Information to any third party, including to any other marketing partner, except as herein provided. Jenna shall protect such information from disclosure by reasonable means, including without limitation, to at least the same minimal level of security that Jenna uses for their most crucial proprietary, confidential and trade secret information, and that which is required under applicable law to secure trade secret status. The unauthorized disclosure of such KKF Confidential Information is a material breach of the Parties' current business relationship which upon such breach, KKF has a right to terminate at their option.

(b) Jenna shall permit access to KKF Confidential Information to the agents, employees, or Affiliates of Jenna only if such disclosure is reasonably believed to be necessary to the purposes of Jenna evaluating, contemplating, recommending, or engaging in any program or service offered by KKF for the purpose of entering into the Proposed Services Agreement with KKF and for the purpose of fulfilling their obligations under the Proposed Services Agreement, and only if said agents, employees, or Affiliates:

(i) reasonably require access to KKF Confidential Information for purposes approved by this Agreement, and

(ii) have been apprised of this Agreement and the obligations of Jenna to maintain the trade secret status of KKF Confidential Information and to restrict their use as provided by this Agreement.

5. Prior to the disclosure of any KKF Confidential Information to one of the employees, agents or Affiliates of Jenna, they will inform such employee, agent or Affiliate of the confidential nature of KKF Confidential Information and cause such employee, agent or Affiliate to agree to keep such KKF Confidential Information confidential and be bound by the terms of this Agreement applicable to Jenna. Jenna shall ensure that KKF Confidential Information is not

- 2 -

CONFIDENTIAL

used or disclosed by such employees, agents or Affiliates except as permitted by this Agreement, and shall be responsible for any unauthorized use or disclosure of KKF Confidential Information by such employees, agents or Affiliates.

      6.    All KKF Confidential Information shall remain, as between the Parties, the exclusive property of KKF, which warrants that they are authorized to disclose KKF Confidential Information. Nothing herein, nor the disclosure of any KKF Confidential Information shall be construed as giving or granting to Jenna any right, title, license, interest, either express or implied, under any patent, copyright, trade secret or other intellectual property, in KKF Confidential Information. Except as expressly contemplated herein, Jenna shall not make any commercial, laboratory, experimental, prototypical, or other use of KKF Confidential Information disclosed by KKF to Jenna without first obtaining the express written consent of KKF.

      7.    Upon the written request of KKF, all tangible KKF Confidential Information (including all copies thereof), shall be promptly delivered to KKF, intangible or electronic information shall be destroyed, and all portions of such documents, notes or summaries containing KKF Confidential Information prepared by or for Jenna (including copies thereof) shall be destroyed.

      8.    The obligations of confidentiality and non-use set forth in this Agreement shall not apply to any portion of KKF Confidential Information which Jenna or their Affiliates can demonstrate:

      (a)    is, at the date of disclosure, or thereafter becomes, public or available to the general public other than through the act or default of Jenna or their employees, agents or their Affiliates; or

      (b)    is known to Jenna or their Affiliates prior to disclosure to Jenna or their employees, agents or their Affiliates under this Agreement and not obtained or derived directly or indirectly from KKF or their Affiliates; or

      (c)    is developed by Jenna or their Affiliates independent of and without any use, reference to, or reliance upon KKF Confidential Information.

      9.    Jenna may disclose KKF Confidential Information pursuant to a requirement of law, provided that they:

      (a)    give KKF prompt written notice of such fact so that they may obtain a protective order or other appropriate remedy concerning any such disclosure;

      (b)    cooperates fully with KKF in connection with their efforts to obtain any such order or other remedy; and

      (c)    discloses, where disclosure is necessary, only KKF Confidential Information legally required to be disclosed, and uses their best efforts to have confidential treatment accorded to the disclosed KKF Confidential Information.

CONFIDENTIAL

KKF Confidential Information that is disclosed pursuant to this Paragraph 9 shall remain confidential for all other purposes.

10. Jenna understands that KKF makes no representation or warranty as to the accuracy or completeness of KKF Confidential Information they provide to Jenna. Jenna agrees that neither KKF nor any of their advisors, representatives, agents, or employees shall be held liable for utilization of KKF Confidential Information which results from the use of said information by Jenna.

11. This Agreement shall, by mutual consent of the Parties, remain in full force and effect at all times from the date signed and executed by all Parties, with the effective date being the date on which the final signature is affixed hereto. <u>Nothing herein shall be construed to waive, abridge, or otherwise limit any greater or longer protections afforded to proprietary information or trade secrets under applicable law.</u>

12. The Parties irrevocably and unconditionally agree to the fullest extent permitted by law that it will not commence any action, litigation or proceeding of any kind whatsoever against any other Party or party in any way arising from or relating to this Agreement in any forum other than the state or federal courts of the State of Louisiana and the Parties hereby waive, to the fullest extent permitted by law, any objection which they may now or hereafter may have to personal jurisdiction or to the laying of venue of any such suit, action or proceeding, and each Party agrees that such courts have subject matter jurisdiction over such action, litigation, or proceeding. Each Party irrevocably and unconditionally submits to the exclusive jurisdiction of such courts and agrees to bring any such action, litigation or proceeding in the state or federal courts of Louisiana. Each Party waives personal service of any and all process and consent that all services of process be made by registered or certified mail, return receipt requested, and service so made shall be deemed to be completed when received. A final judgment in any such action, litigation or proceeding is conclusive and may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. The law applicable to any action, litigation or proceeding shall be the substantive law of the State of Louisiana, without regard to any principles of conflict of laws, and this requirement shall be deemed jurisdictional. Each Party waives their rights to a jury trial. Each Party waives the right, if any, to obtain any award for exemplary or punitive damages from the other in any judicial or other adjudicatory proceedings. The prevailing Party to any action, litigation, or proceeding (as determined by the court awarding such fees and costs) shall be awarded their reasonable attorney's and other professional fees and costs.

13. If any portion of this Agreement shall be held invalid, such invalidity shall not affect the other provisions hereof, and to this extent, the provisions of this Agreement are to be and shall be deemed severable. If any Party hereto incurs any legal fees, whether or not action is instituted, to enforce the terms of this Agreement or to recover damages or injunctive relief for breach of this Agreement, it is agreed that the successful or prevailing Parties shall be entitled to reasonable attorney fees and other costs in addition to any other relief to which it or they may be entitled.

14. This Agreement constitutes the entire agreement of the Parties relating to confidential treatment and use of KKF Confidential Information, and supersedes all prior written or oral representations, agreements and understandings relating thereto. Once the Proposed

CONFIDENTIAL

Services Agreement are executed, those agreements shall have priority on governing the terms and conditions between the Parties and shall supersede any conflicting agreement contained herein, if any. This Agreement may be amended only by a written instrument signed by the Parties hereto.

15. Jenna may not assign or transfer any of their rights or obligations under this Agreement except to a parent, subsidiary, or Affiliate thereof, without the prior written consent of KKF, which consent must not be unreasonably withheld. In making a permitted assignment, Jenna shall not thereby be relieved of their obligations to continue to maintain the confidentiality of KKF Confidential Information disclosed to it under this Agreement. This Agreement is binding upon and inures to the benefit of all Parties and their heirs, executors, legal and personal representatives, successors and assigns.

16. If any court decision determines that this Agreement, or any part, is unenforceable because of the duration of such provision or its scope, such court shall have the power to reduce the duration or scope of such provision and, in its reduced form, such provision shall then be enforceable and shall be enforced. If any provision of this Agreement is held by a court to be invalid, void, or unenforceable and the court does not elect to reduce such provision, this Agreement shall be deemed amended to delete such provision or portion adjudicated to be invalid or unenforceable without in any way affecting the remaining parts of this Agreement.

17. Delay or failure to exercise any right or remedy hereunder shall not impair such right or remedy or be construed as a waiver thereof or as acquiescence in a breach of this Agreement. Any single or partial exercise of any right or remedy shall not preclude any other or further exercise thereof or the exercise of any other right or remedy.

18. Jenna agrees to indemnify, defend, and hold harmless KKF against any and all losses, damages, claims or expenses incurred or suffered by KKF or any of their officers, directors, employees, representatives or advisors as a result of the breach of this Agreement by Jenna. It is understood and agreed that money damages would not be a sufficient remedy for any breach of this Agreement and that KKF shall be entitled to specific performance and injunctive or other equitable relief as a remedy for any such breach. Jenna further agrees to waive any requirement for the security or posting of any bond in connection with such remedy. Such remedy shall not be deemed to be the exclusive remedy for breach of this Agreement but shall be in addition to all other remedies available at law or equity to KKF. In the event of a dispute relating to this Agreement, if a court of competent jurisdiction determines in a final, non-appealable order or decision that Jenna has breached this Agreement, then Jenna shall reimburse KKF for their reasonable legal fees and expenses incurred in connection with such dispute, including any appeals therefrom.

IN WITNESS WHEREOF, the Parties hereto have individually and by their duly authorized representatives executed and delivered this Agreement, to be effective as of the date first written above.

Agreed to and accepted by Krispy Krunchy Foods, LLC:

By: _____

CONFIDENTIAL

_____
Signature

_____
Printed Name

_____
Title

Agreed to and accepted by:

Harry Markowitz

_____
Signature

_____
Printed Name

Date: _____

Agreed to and accepted by:

JENNA MARKETING, LLC:

By: _____
Signature

_____
Printed Name

_____
Title

Date: _____

- 6 -