# EXHIBIT G

## AGREEMENT AND CONSENT TO ADMISSION OF
## ASSIGNEE JENNA MARKETING, LLC, AS A NEW MEMBER

This Agreement and Consent to Admission of Assignee Jenna Marketing, LLC as a New Member (the " Agreement ") is signed and agreed on the dates reflected below by and between Krispy Krunchy Foods, L.L.C. of Jonesville, Louisiana ("*KKF*"), Krispy Krunchy Foods – Los Angeles, L.L.C., a California Limited Liability Company (Los Angeles) and Jenna Marketing, LLC, ("Jenna Marketing, LLC") (collectively, the "Parties") for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged by each of the Parties:

WHEREAS, KKF is the sole member of Krispy Krunchy Foods – Los Angeles, L.L.C.;

WHEREAS, on or about November 1, 2011, KKF assigned to Jenna Marketing, LLC, as assignee,
a membership interest in Los Angeles equal to 49% of Los Angeles;

WHEREAS, KKF and Jenna Marketing, LLC now desire that Jenna Marketing, LLC be admitted as and become a member of Los Angeles and that Jenna Marketing, LLC shall hereafter be a member of Los Angeles;

Now, therefore, the Parties agree, for cause stated herein, the exchange of promises herein, and good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, to the following:

1.      KKF hereby unanimously consents to admit Jenna Marketing, LLC as a member of Los Angeles with all the rights and powers of a member of Los Angeles under Los Angeles's Articles of Organization, Operating Agreement and also Title 12, Section 1301, *et seq* . of the Revised Statutes of Louisiana (the "LLC Statutes"), except as those are changed or modified by this Agreement, which shall control.

KKF hereby confirms and acknowledges that on or about November 1, 2011,KKF assigned to Jenna Marketing, LLC a 49% membership interest in Los Angeles, and KKF hereby consents to and ratifies that act effective as of November 1, 2011. By this Agreement, KKF accepts assignee Jenna Marketing, LLC as a member of Los Angeles, and Jenna Marketing, LLC as owner of 49% of Los Angeles.  The consideration for the sale of a thirty-nine (39%) percent membership interest in Los Angeles by KKF is the performance of certain services by Jenna Marketing, LLC (and his affiliated officers, directors, principals, agents, members and employees) as specified in paragraph 2.  The consideration for the additional ten (10%) percent interest is that Jenna Marketing, LLC and his affiliated officers, directors, principals, agents, members, and employees agree to be bound by all pertinent non-compete, restrictive covenants, and confidentiality agreements.

The parties hereto agree to cause the preparation of an Amended and Restated Operating Agreement in conformity herewith and reflecting the Membership Ownership as being 51% KKF and 49% Jenna Marketing, LLC.

2.   In addition to any duties or obligations that Jenna Marketing, LLC has under Los ngeles's Articles of Organization, Operating Agreement, Amended and Restated Operating Agreement or the LLC Statutes, except as those are changed or modified by this Agreement, Jenna Marketing, LLC agrees that it shall, as a member of Los Angeles, and with the consent and permission of KKF:

    (a)    Actively recruit, solicit and acquire new customers for Los Angeles and consistent with the KKF concept within Los Angeles Territory.

    (b)    Actively train new and existing customers of Los Angeles and provide all reasonable support required by such new customers on behalf of Los Angeles;

    (c)    Actively seek increased sales and product usage with existing customers of Los Angeles;

    (d)    Actively promote good will with existing customers of Los Angeles;

    (e)    Perform all tasks in accordance with the program established by KKF within Los Angeles Territory that are timely communicated to Jenna Marketing, LLC;

    (f)    Comply with Los Angeles's business and accounting practices that are timely communicated to Jenna Marketing, LLC;

    (g)    Never pledge, mortgage or encumber its membership interest or offer for sale or assignment all or part of its membership interest to any person other than KKF, without KKF's consent, except as is specifically authorized in Los Angeles's Articles of Organization, Operating Agreement, this Agreement or the LLC Statute. Jenna Marketing, LLC agrees that any attempted sale, assignment, pledge, mortgage or encumbrance shall be void ab initio. Jenna Marketing, LLC further agrees to give notice to KKF as soon as practicable of any suit, claim or lien filing relating to Jenna Marketing, LLC' membership interest;

    (h)    Comply with the provisions of this Agreement regarding non-competition; and

    (i)    Comply with the Performance Targets as specified in Addendum A.

3.   In addition to any duties or obligations that it has under Los Angeles's Articles of Organization, Operating Agreement, Amended and Restated Operating Agreement or the LLC Statutes, except as those are changed or modified by this Agreement, KKF agrees that it shall, as a member of Los Angeles:

    (a)    Actively seek increased sales and product usage with existing customers of Los Angeles;

    (b)    Actively promote good will with existing customers of Los Angeles;

    (c)    Actively advertise and promote the goods and services of Los Angeles

and the KKF concept in Los Angeles Territory;

(d)    Never pledge, mortgage or encumber its membership interest or offer for sale or assignment all or part of its membership interest to any person other than Jenna Marketing, LLC, without Jenna Marketing, LLC' consent, except as is specifically authorized in Los Angeles's Articles of Organization, Operating Agreement, this Agreement or the LLC Statute. KKF agrees that any attempted sale, assignment, pledge, mortgage or encumbrance shall be void ab initio. KKF further agrees to give notice to KKF as soon as practicable of any suit, claim or lien filing relating to KKF's membership interest;

KKF and Los Angeles agree that Jenna Marketing, LLC shall have exclusivity as to sales of any and all itmes within Los Angeles's Territory, which is defined herein below within Section 4 a).

4.    For the consideration previously expressed, Jenna Marketing, LLC  and his affiliated officers, directors, principals, agents, members, and employees agree that they shall not, either separately or jointly, hereinafter physically engage in or physically conduct any business similar to or in competition with the commercial enterprise of Los Angeles, or any other affiliated entity, whether directly or indirectly, either as principal, agent, manager, master, servant, employee, owner, member, partner, stockholder, director or officer of any entity, for the term and duration of this agreement, with respect to the "Los Angeles Territory" or "KKF Territory" as defined herein below and for two (2) years following this Agreement's termination.  The foregoing notwithstanding, should any state located within Los Angeles Territory or KKF Territory authorize a term regarding non-compete or restrictive covenants longer than two (2) years, such longer term shall control.  It is the desire of the parties that the maximum term authorized by state law for non-compete agreements and restrictive covenants shall apply.

a)  For purposes herein, Los Angeles Territory shall be defined as the territory that is serviced by SYSCO-Los Angeles, or the successor distributor designated by KKF.

b)  For purposes herein, KKF Territory shall be defined as per the attached Schedule "A."

5.  Revenue will be generated by the sale of Krispy Krunchy proprietary items to the warehouse designated by Los Angeles to distribute the concept in Los Angeles Territory. KKF will be responsible for purchasing the proprietary items from the suppliers, selling the items to the designated warehouse, accounts payable and accounts receivable.

6.  Net profits of Los Angeles, which shall be distributed monthly to the members commensurate with their respective ownership percentage, are defined as Total Revenues less Cost of Goods less Expenses. Expenses include, but are not limited to:

a.  Trainer's salary
b.  Payroll tax
c.  Health Insurance
d.  Advertising
e.  Promotions
g.  Bad Debt

h.  Travel Expenses
i.  Trainer's Travel Expenses
j.  Sales Commission
k.  Freight and shipping
l.  Legal & Professional
m.  Telephone

7.     KKF will produce Los Angeles financial statements, consistent with generally accepted accounting practices, that shall reflect and detail all Los Angeles's monthly revenues, expenses and net profits, and KKF will provide them to Jenna Marketing, LLC on a monthly basis.

8.     The Parties agree that in the event either KKF or Jenna Marketing, LLC wishes to resign, withdraw or disassociate from Los Angeles, such member will give no less than 90 days notice to the other member, and the member that resigns, withdraws or disassociates from Los Angeles shall be entitled to receive fair value of its membership interest upon withdrawal.

9.     Los Angeles represents that it is registered and in good standing under the laws of the State of California and has the power to contract for and perform the acts and purposes of this Agreement.

10.     Each of the Parties represents that the person signing this Agreement is authorized to bind it.

11.     The Parties further agree that they will not permit or cause the terms of this Agreement, including but not limited to the consideration therefore, to be disclosed, made known, or publicized in any manner whatsoever to any member of the media, to any association of attorneys, to any service which compiles or reports verdicts or settlements, or to any other person, firm, corporation or entity and further agree that such non-disclosure and non-publication is a material condition of this Agreement. This covenant of non-publication or disclosure shall in no way be deemed to prohibit the assertion of any claim, right or cause of action by any party against each other or any other party.

12.     This Agreement contains, and is intended as, a complete statement of all of the terms of the agreement between the parties with respect to the matters provided for herein, supersedes any previous agreements and understandings (whether written or oral) between the parties with respect to those matters and cannot be amended or changed except by a written instrument duly executed by or on behalf of all the Parties.

13.     If any part or provision of this Agreement or any other agreement, document or writing delivered pursuant to or in connection with this Agreement shall be declared invalid or unenforceable under the applicable law by a court of competent jurisdiction, said provision or part shall be ineffective to the extent of such invalidity or unenforceability only, without in any way affecting the remaining parts or provisions of this Agreement or said other agreement, document or writing.

14.     Any party may waive compliance by another party with any of the provisions of this Agreement. No waiver of any provision shall be construed as a waiver of any other provision. Any waiver must be in writing.

15.     This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and permitted assigns. Nothing in this Agreement shall create or be deemed to create any third party beneficiary rights in any person or entity (including any employees) not a party to this Agreement.

16.     This Agreement may be signed in any number of counterparts and all such counterparts shall be read together and construed as one and the same document.

17.     Whether or not the transactions contemplated hereby shall be consummated, each of the Parties shall pay its own expenses and costs (including, without limitation, the fees, disbursements and expenses of its attorneys, accountants and consultants), incurred by it in negotiating, preparing, and closing this Agreement.

18.     Each party represents and warrants that it has read and fully understands this Agreement; that each has been advised by an attorney of their own choosing as to the force and effect of this Agreement and that each party executes it voluntarily and with full understanding of its force and effect; that no representation or statement made by any party to this Agreement or any third party has influenced any party's execution of this Agreement , except as expressly provided herein; and no promise or representation of any kind, except as fully stated in this Agreement, has been made or relied upon by any party.

19.     Each party represents and warrants that they have had full input into the drafting of this Agreement and that this Agreement shall not be construed or interpreted in favor of or against any party as a result of the drafting or preparation of the Agreement.

20.     Should any party be required to enforce the terms or provisions of this Agreement, the party against whom such action is brought shall be responsible for the reasonable legal fees, expenses and costs incurred by such party, provided that the party bringing such action prevails in such proceedings.

SWORN TO AND SUBSCRIBED before me, Notary Public and the undersigned

competent witnesses on this _____ day of _____ , 2011 in

Louisiana, after a due reading of the whole.


Witnesses:                                          Krispy Krunchy Foods, L.L.C. for itself
                                                    and on behalf of Los Angeles

_____
     Angie D. Hebert

_____        By: _____
     Shantell Schexnider                     Neal G. Onebane,
                                             Managing Member


Print:

                    Greg R. Murri
                  NOTARY PUBLIC
        in and for LAFAYETTE Parish, Louisiana
            Notary Number LA BAR ROLL NO. 24561
       My Commission Expires: FOR LIFE
            Street Address: 1200 CAMELLIA BLVD., SUITE 300
            City, State & ZIP: LAFAYETTE, LA  70508


        [SEAL]

SWORN TO AND SUBSCRIBED before me, Notary Public and the undersigned competent witnesses on this 5th day of _October_, 2011 in _Los Angeles_, after a due reading of the whole.

Witnesses:

JENNA MARKETING, LLC

By:_____
Harry Markowitz
Managing Member or Sole Member

Print:

NOTARY PUBLIC
in and for _____ County, Los Angeles
Notary Number _____
My Commission Expires: _____
See Attached Notarial Certificate

[SEAL]

# CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT

State of <u>California</u>

County of <u>Los Angeles</u>

} **SS**.

On <u>10/5/2011</u> before me, <u>Emil Sargisyan, Notary Public</u>,
      DATE                                    Name, Title of Officer (e.g., "Jane Doe, Notary Public")

personally appeared <u>Harry Markowitz</u>,
                                            NAME(S) OF SIGNER(S)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature Of Notary Public

EMIL SARGISYAN
Commission # 1906538
Notary Public - California
Los Angeles County
My Comm. Expires Oct 2, 2014

Place Notary Seal Above

━━━━━━━━━━━━━━━━ **OPTIONAL** ━━━━━━━━━━━━━━━━

*Though the data is not required by law, it may prove valuable to persons relying on the document and could prevent fraudulent removal and reattachment of this form to another document.*

## DESCRIPTION OF ATTACHED DOCUMENT

Title or Type of Document:   <u>Agreement and Consent to Admission of Assignee Jenna Marketing, LLC</u>

Document Date: <u>10/05/2011</u>                    Number of Pages: _____

Signer(s) Other Than Named Above: _____

## CAPACITY(IES) CLAIMED BY SIGNER

Signer's Name: _____

☒ Individual
☐ Corporate Officer – Title(s): _____
☐ Partnership - ☐ Limited    ☐ General
☐ Attorney in Fact
☐ Trustee
☐ Guardian or Conservator
☐ Other: _____

Signer Is Representing: _____

RIGHT THUMBPRINT
OF SIGNER

Top of thumb here

ID 03148E (Rev 01/2008)                                                                    (098P)

Page 1 of 1



## SCHEDULE "A"

### *KKF  TERRITORY*

*KKF Territory* shall be defined to be those states, counties, and parishes where *KKF* currently and hereafter conducts business, except as deemed within the Los Angeles Territory, as herein defined or hereinafter agreed upon.

## ADDENDUM "A"

### *PERFORMANCE REQUIRMENTS*

The performance requirements for Jenna Marketing, LLC in Los Angeles are as follows:

- 20 locations will be in operation by the end of the first year.
- 40 locations will be in operation by the end of the Second year.
- 65 locations will be in operation by the end of the third year.
- 95 locations will be in operation by the end of the fourth year.
- 120 locations will be in operation by the end of the fifth year.
- There will be a 7% revenue growth in subsequent years.

Failure to meet these goals could result in the license to market the Krispy Krunchy concept being revoked.