# EXHIBIT H

RUSS, AUGUST & KABAT
Larry C. Russ, State Bar No. 082760
lruss@raklaw.com
Jules L. Kabat, State Bar No. 61659
jkabat@raklaw.com
Nathan D. Meyer, State Bar No. 239850
nmeyer@raklaw.com
12424 Wilshire Boulevard, 12th Floor
Los Angeles, California  90025
Telephone:  (310) 826-7474
Facsimile:(310) 826-6991

Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNA MARKETING, LLC, a California limited liability company,<br><br>Plaintiff,<br><br>vs.<br><br>KRISPY KRUNCHY FOODS, LLC, a Louisiana limited liability company; and DOES 1-10 inclusive,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br><br>1. **BREACH OF FIDUCIARY DUTY;**<br>2. **VIOLATIONS OF CAL. CORP. CODE §31000, *ET SEQ.*;**<br>3. **VIOLATIONS OF CAL. BUS. & PROF. CODE §20000, *ET SEQ.*;**<br>4. **BREACH OF CONTRACT; AND**<br>5. **DECLARATORY RELIEF**<br><br>**DEMAND FOR JURY TRIAL** |

In October of 2011, Krispy Krunchy Foods, LLC ("KKF") and Jenna Marketing, LLC ("Jenna") entered into a written contract to build and promote the Krispy Krunchy brand of chicken.  While this agreement was called an "Agreement and Consent to Admission of Assignee Jenna Marketing, LLC, as a New Member" (hereinafter, the "New Member Agreement"), the relationship was actually a hidden franchise agreement.  During the course of the nine-year relationship between Jenna and KKF, Jenna has built the most profitable and successful territory for KKF,

representing 14% of KKF's gross revenues nationally. KKF now seeks to breach its fiduciary duty to its partner by seeking to force Jenna to enter into a new agreement, giving KKF the right to terminate Jenna without compensation or face termination of its hidden franchise.

In fact, during the course of negotiating a letter of intent between Jenna and KKF, KKF filed an action in a federal district court in the State of Louisiana to dissolve the New Member Agreement and literally extort Jenna into giving up material rights for which it negotiated in 2011 or face the cost of spending hundreds of thousands of dollars litigating with KKF on its home turf in Louisiana.

As the facts below establish, from the outset, KKF intentionally manufactured a scheme to evade the franchise laws and its regulatory protection of franchisees. Instead of registering its franchise with various states, KKF formed a series of limited liability companies around the country. Instead of becoming a franchisor, KKF sold marketing partners a bill of goods by inviting them to become members of these LLC's. However, the terms of the New Member Agreement KKF entered into with Jenna, and other marketing partners around the U.S., were deceptive and intended to create illusory rights, so that KKF could withdraw at any time without adequate recourse. KKF has taken advantage of its deceptive contractual agreements to compel its marketing partners to enter into revised agreements where these marketing partners could be more easily terminated at KKF's command. Many of the marketing partners who made the mistake of entering into the revised agreement were promptly terminated by KKF.

This lawsuit seeks to clarify Jenna's rights and force KKF to abide by the terms of a written agreement as well as its oral representations. This action further seeks to prevent KKF from breaching its fiduciary duty by dissolving an LLC which it controls, for the sole purpose of stealing a business Jenna has built up over the course of nine years of diligent efforts.

# Parties

1. Plaintiff Jenna Marketing, LLC is a California limited liability company. Harry Markowitz ("Markowitz") is a member and principal of Jenna. Tony Thapthimthong ("Thapthimthong") is a member of Jenna. Markowitz and Thapthimthong are domiciled in the State of California.

2. Defendant Krispy Krunchy Foods, LLC is a Louisiana limited liability company. Members of KKF are domiciled in the states of Louisiana, Tennessee, Illinois, Mississippi, Georgia, and New York.

3. Plaintiff is presently unaware of the true names and capacities of defendants Does 1 through 10, inclusive, and accordingly sues said defendants by such fictitious names. Plaintiff will amend this complaint to set forth the true names and capacities of said defendants when ascertained and as necessary.

4. Plaintiff is informed, believes and based thereon alleges that each Doe defendant is responsible in some manner for the claims at issue in this complaint. Plaintiff is informed, believes and based thereon alleges that at all relevant times each Doe defendant was the agent, servant, employee, conspirator and/or joint venturer of each of the other defendants, was acting within the course and scope of one or more of such relationships and with the knowledge, ratification, permission and/or consent of one or more of the other defendants.

# Jurisdiction and Venue

5. This Court has subject matter jurisdiction over this action under 28 U.S.C. §1332.

6. Jenna is a citizen of the State of California, whose members are domiciled within the State of California.

7. KKF is a citizen of the State of Louisiana, whose members are domiciled in the states of Louisiana, Tennessee, Illinois, Mississippi, Georgia, and New York.

8. The amount in controversy is greater than $75,000.

9. Venue is proper in the Central District of California because a substantial part of the events or omissions giving rise to the claims occurred in this District.  *See* 28 U.S.C. §1391(b)(2).

## Facts

10. KKF is the owner of Krispy Krunchy Chicken, a brand of foodstuffs sold in convenience stores and gas stations throughout the United States.

11. On information and belief, in previous years, KKF structured its operations through a number of subsidiary limited liability companies which service designated geographic areas, or territories, across the country.  KKF entered into agreements with third parties, called "Marketing Partners," whereby the third party becomes a member of the subsidiary limited liability company in order to market and sell the Krispy Krunchy Chicken brand within a geographic area.  KKF remains a member of the limited liability company along with the Marketing Partner.

12. Marketing Partners operate by recruiting convenience stores within a territory to sell the Krispy Krunchy brand.  The convenience stores purchase Krispy Krunchy proprietary equipment, menu boards, graphics, and signage from KKF, and Krispy Krunchy brand products from a food services distributor selected by the Marketing Partner.  The food services distributor purchases the Krispy Krunchy products from KKF.

13. Net profits from the sale of Krispy Krunchy proprietary items are distributed to KKF and the Marketing Partner in amounts proportionate to their membership share in the limited liability company.

14. Markowitz, a member and principal of Jenna, has substantial experience in the food services industry.  Markowitz first encountered the Krispy Krunchy brand during a conference of the National Association of Convenience Stores in 2008.  Impressed by the product, Markowitz asked Dan Shapiro ("Shapiro"), a principal of KKF, why Krispy Krunchy Chicken was not sold in California.  Although Shapiro responded KKF's current operations could not extend

to the California market, Markowitz and Shapiro remained in contact due to Markowitz's interest in the Krispy Krunchy brand.

15. Markowitz and Shapiro met again in September of 2011 during a conference for senior executives of convenience stores at Terranea Resort in Palos Verdes, California. After Shapiro informed Markowitz that KKF was extending its reach to California, Markowitz advised Shapiro that his experience servicing food brands to the same class of customers as KKF made him uniquely suited to expand the Krispy Krunchy brand in California. Throughout the remainder of September of 2011, Shapiro sent Markowitz customer leads and offers to become a Marketing Partner with KKF, while Markowitz scheduled meetings between KKF and SYSCO Corporation, a food services distributor.

16. On October 5, 2011, KKF and Jenna entered into the New Member Agreement. Pursuant to the New Member Agreement, Jenna became a Marketing Partner with KKF through co-ownership of Krispy Krunchy Foods – Los Angeles, LLC ("KKF-LA"). KKF-LA is a Louisiana limited liability company and a subsidiary of KKF. The name of Krispy Krunchy Foods – Los Angeles was changed to Krispy Krunchy Foods – California and remains known by that name.

17. The New Member Agreement is attached hereto as Exhibit A.

18. Pursuant to the New Member Agreement, KKF assigned a 49% membership interest in KKF-LA to Jenna. In consideration for this sale, Jenna agreed, *inter alia*, to: recruit, solicit, and acquire new customers for KKF-LA within the Los Angeles Territory; train new and existing customers of KKF-LA and provide all reasonable support required by such new customers on behalf of KKF-LA; promote good will with existing customers of KKF-LA; perform all tasks in accordance with the program established by KKF within the Los Angeles Territory that are timely communicated to Jenna; comply with KKF-LA's business and accounting practices; comply with the provisions of the New Member Agreement

regarding non-competition; and comply with "Performance Targets" specified in Addendum A of the New Member Agreement.

19. The Los Angeles Territory is defined by the New Member Agreement as the territory serviced by SYSCO-Los Angeles, or the successor distributor designated by KKF.

20. Pursuant to the performance requirements set out in Addendum A of the New Member Agreement, Jenna is required to establish a minimum number of locations to be in operation by the end of each year for five years. After five years, revenue growth must increase by 7% for each subsequent year. Failure to meet those performance requirements may result in the revocation of Jenna's license to market Krispy Krunchy products.

21. Under the New Member Agreement, net profits from the sale of Krispy Krunchy proprietary items by KKF-LA are distributed monthly to KKF and Jenna in an amount commensurate with their respective ownership interest in KKF-LA.

22. Pursuant to paragraph 8 of the New Member Agreement, either KKF or Jenna may resign, withdraw, or disassociate from KKF-LA upon giving no less than 90 days' notice to the other member. The member who resigns, withdraws, or disassociates from KKF-LA is entitled to receive the fair value of its membership interest upon withdrawal. Nothing in the New Member Agreement provides that KKF may terminate the Agreement. The only remedy provided by the New Member Agreement requires Jenna to pay the "fair value" of KKF's membership interest if KKF withdraws.

**Jenna Performed Its Obligations Under the New Member Agreement**

23. In the ensuing years, Markowitz recruited profitable customers for KKF-LA, including Circle K, Chevron, Sierra Energy, Alabassi Construction, Buy2, Andretti Group, and JP Management convenience stores, using his substantial contacts and excellent reputation amongst convenience stores operators in California, Nevada, Arizona, Washington, and Oregon.

24. In 2014, Circle K convenience stores in the states of Washington and Oregon solicited Jenna to expand the sale of the Krispy Krunchy brand to their markets due to the success of Jenna in California. KKF, by and through Shapiro, approved Markowitz's selection of a distributor for Washington and Oregon, and Jenna entered that market.

25. Under Markowitz's leadership, KKF-LA grew its revenues in the California/Oregon territory to approximately $1.5-million in 2013, $3-million in 2014, $7-million in 2015, over $10-million in 2016, $12-million in 2017, $16-million in 2018, and $22-million in 2019. By 2019, KKF-LA controlled the most profitable territory for KKF, with sales that nearly doubled the next highest grossing territory. In sum, Jenna has far exceeded 7% year-over-year growth in revenues.

26. The benefits of the partnership between Jenna and KKF extended beyond the success of KKF-LA, as Markowitz facilitated lucrative partnerships between KKF and Circle K outside the territory of KKF-LA.

27. On information and belief, KKF solicited Markowitz to take charge of its failing territory in Arizona, in recognition of the success of the partnership between Jenna and KKF. Under Markowitz's leadership, sales of the Krispy Krunchy brand in Arizona increased from approximately $800,000 in 2016 to $1.8-million in 2019.

28. Beyond recognizing the value of its partnership with Jenna by repeatedly soliciting Jenna to move into new territories, KKF acknowledged the successful leadership of Markowitz by awarding him the "Most Innovative Marketing Partner" award in 2015 and the "Market of the Year" award in 2019.

**KKF Sought to Unlawfully Eliminate Jenna from its Business Operations**

29. Despite the profitability of the Krispy Krunchy brand under the leadership of Markowitz, KKF commenced a plan to deny Jenna the fruits of its years of labor.

30. Beginning in 2015, KKF initiated a policy whereby KKF insisted Marketing Partners enter into new contracts with KKF. The contracts proposed by KKF were one-sided, created new minimum sales requirements, and gave KKF the right to terminate a marketing partner without compensation for the territory.

31. On information and belief, KKF threatened to terminate its relationships with Marketing Partners who did not sign the new contracts. Because some or all of the Marketing Partners' operations extended beyond the territories expressly delineated in their contacts with KKF, KKF threatened to delegitimize years of hard work and investment in the Krispy Krunchy brand by the Marketing Partners.

32. On information and belief, Marketing Partners who entered the new contracts with KKF were obligated to adhere to unprofitable and onerous terms, including meeting excessive revenue quotas. On information and belief, KKF knew the terms of the new contracts were onerous at the time the new contracts were drafted, but intended to use the onerous terms to force Marketing Partners out of their partnerships with KKF.

33. On information and belief, KKF intended to terminate its relationships with Marketing Partners to profit financially by gaining sole control of sales territories made profitable through the efforts, experience, and investment of the Marketing Partners.

34. On information and belief, KKF actually threatened Marketing Partners with termination if they refused to sign the new contracts with KKF.

35. On information and belief, KKF actually terminated its relationship with several Marketing Partners who entered the new contracts with KKF.

36. In March of 2017, Jeanne Cullen, another principal of KKF who was retained as General Counsel, solicited Markowitz to enter a new contract between KKF and Jenna. Due to the onerous terms of the new contract, Markowitz declined to agree to its terms.

Russ, August & Kabat

37. Over the course of the following years, the negotiations between Jenna and KKF stagnated because KKF was unable or unwilling to deviate from its onerous and one-sided terms. Moreover, Markowitz observed that Marketing Partners who entered new contracts with KKF were ultimately terminated by KKF, and territories serviced by KKF without Marketing Partners were mismanaged. For example, Markowitz observed that KKF lost its business with convenience stores owned and/or operated by Circle K in the Midwest, Ramey's Marketplace, Mapco, and Brothers Groceries in territories in which KKF did not have a Marketing Partner.

38. During the course of late 2019 and 2020, Jenna and KKF commenced negotiations to enter into a new Marketing Partner agreement, providing for reciprocal rights of both parties. When the parties could not agree on certain material terms, KKF threatened to terminate all of Jenna's rights under the New Member Agreement, unless Jenna executed a letter of intent by a date certain.

39. In 2020, a representative of KKF sent Markowitz an e-mail threatening suit against Jenna if Markowitz refused to enter the new contract proposed by KKF within a day. Markowitz refused to enter the new contract.

40. On November 4, 2020, KKF initiated a lawsuit against Jenna in the United States District Court for the Western District of Louisiana (the "Louisiana Lawsuit"). *See Krispy Krunchy Foods, LLC v. Jenna Marketing, LLC*, Case No. 6:20-cv-01424-JDC-PJH (W.D. La. Nov. 4, 2020). The Louisiana Lawsuit was not disclosed to Jenna and has not been served as of the date of this Complaint. Rather, the Louisiana Lawsuit was filed to preempt Jenna from filing the instant lawsuit in the Central District, as well as to gain leverage in its negotiations with Jenna.

41. Among other things, KKF seeks judicial dissolution of KKF-LA, a declaration that the New Member Agreement has been terminated by KKF, and a declaration that neither Jenna nor Markowitz has any remaining rights under the New Member Agreement.

42. Although KKF drafted the New Member Agreement, KKF conveniently alleges in the Louisiana Lawsuit that the Agreement is terminable because KKF did not include a term defining the duration of the contract.

**FIRST CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY**

43. Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1 through 43 above.

44. As described above, KKF and Jenna are members of KKF-LA, a limited liability company.

45. As a majority member of KKF-LA, KKF owes Jenna the fiduciary duties of loyalty and care. KKF's attempt to dissolve the LLC seeks to take advantage of its position as a majority member by denying Jenna the value of its investment in KKF-LA and stealing the territory of KKF-LA for itself, at Jenna's expense.

46. In addition, over time, KKF has allocated more and more expenses, which are inconsistent with the parties' dealings, in order to reduce the profits of KKF-LA and increase KKF's own profits at Jenna's expense.

47. As a direct and proximate result of the foregoing, Jenna has been damaged in amounts to be proven at trial.

**SECOND CAUSE OF ACTION FOR VIOLATIONS OF CAL. CORP. CODE §31000, *ET SEQ.***

48. Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1 through 48 above.

49. The New Member Agreement established a franchise between KKF, as franchisor, and Jenna, as franchisee, whereby KKF granted Jenna the right to engage in the business of offering, selling, marketing, and distributing goods associated with KKF's Krispy Krunchy brand, consistent with a marketing system devised by KKF, for valuable consideration and fees paid by Jenna, directly and indirectly, to KKF. *See* Cal. Corp. Code §31005.

50. The California Franchise Investment Law, Cal. Corp. Code §31000, *et seq.*, prohibits:

    a. The offer and sale of a franchise by means of untrue statements or omissions of material fact, *see* Cal. Corp. Code §31201;

    b. The sale of a franchise subject to registration without first providing the prospective franchisee a copy of the franchise disclosure document, *see* Cal. Corp. Code §31119; and

    c. The offer and sale of a franchise not registered with the State of California or exempted from registration, *see* Cal. Corp. Code §31110.

51. KKF breached the California Franchise Investment Law by:

    a. Offering and selling to Jenna the franchise embodied in the New Member Agreement by means of untrue and misleading statements related to the terms and effect of the New Member Agreement, and the existence and effect of the license to use the Krispy Krunchy brand and related trademarks;

    b. Selling a franchise subject to registration in the State of California without first providing Jenna a copy of the franchise disclosure document; and

    c. Offering and selling to Jenna a franchise not registered with the State of California or exempted from registration.

52. Pursuant to Cal. Corp. Code §31300, KKF is liable to Jenna for any harm and damage caused by violation of the Franchise Investment Law, including, without limitation, any harm by its wrongful attempts to terminate the franchise.

**THIRD CAUSE OF ACTION FOR VIOLATIONS OF CAL. BUS. & PROF. CODE SEC. 20000, *ET SEQ.***

53. Jenna incorporates herein by reference the allegations set forth in paragraphs 1 through 53 above.

54. The California Franchise Relations Law, Cal. Bus. & Prof. Code §20000 *et seq.*, is intended to protect franchisees. Cal. Bus. & Prof. Code §20020 provides: "Except as otherwise provided by this chapter, no franchisor may

terminate a franchise prior to the expiration of its term, except for good cause. Except as provided in Section 20021, good cause shall be limited to the failure of the franchisee to substantially comply with the lawful requirements imposed upon the franchisee by the franchise agreement after being given notice at least 60 days in advance of the termination and a reasonable opportunity, which in no event shall be less than 60 days from the date of the notice of noncompliance, to cure the failure. The period to exercise the right to cure shall not exceed 75 days unless there is a separate agreement between the franchisor and franchisee to extend the time."

55. The California Franchise Relations Law provides that a franchisor may not "fail to renew a franchise unless such franchisor provides at least 180 days prior written notice of its intention not to renew[.]" Cal. Bus. & Prof. Code §20025(a). The refusal to renew may not be "for the purpose of converting the franchisee's business premises to operation by employees or agents of the franchisor for such franchisor's own account[.]" *Id.* §20025(b)(1).

56. Jenna substantially complied with the requirements imposed upon it by the New Member Agreement.

57. KKF has actually and constructively terminated and failed to renew the franchise agreement with Jenna by demanding Jenna agree to onerous and one-sided contractual terms not set forth in the New Member Agreement.

58. KKF has actually and constructively terminated and failed to renew the franchise agreement by seeking to dissolve KKF-LA and terminate its relationship with Jenna in retaliation for Jenna's refusal to enter into a new franchise agreement.

59. On information and belief, Jenna has actually and constructively terminated and failed to renew the franchise agreement with Jenna for the purpose of converting Jenna's business to operation by employees or agents of KKF for KKF's sole benefit.

60. KKF has actually and constructively terminated and failed to renew the franchise agreement with Jenna by taking exclusive control of the Krispy Krunchy

brand and related trademarks and exercising control over Jenna through the assigned rights under those marks.

61. Pursuant to Cal. Bus & Prof. Code §20035, KKF is liable to Jenna for the fair market value of the franchised business and franchise assets.

62. In addition, pursuant to Cal. Bus & Prof. Code §20035(b), Jenna demands that the Court enjoin the nonrenewal of the franchise.

## FOURTH CAUSE OF ACTION FOR BREACH OF CONTRACT

63. Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1 through 63 above.

64. On October 5, 2011, KKF and Jenna entered the New Member Agreement, a valid and enforceable contract.

65. Jenna performed its obligations under the terms of the New Member Agreement, including, *inter alia*, training new and existing customers and providing all reasonable support to such customers on behalf of KKF-LA, seeking increased sales and product usage with existing customers of KKF-LA, promoting good will with existing customers of KKF-LA, complying with business and accounting practices, and complying with the performance targets set out in Addendum A of the New Member Agreement.

66. KKF breached the terms of the New Member Agreement, including by competing with Jenna in the commercial enterprises of KKF-LA, failing to distribute net profits to Jenna commensurate with Jenna's ownership interest in KKF-LA, and failing to offer or compensate Jenna for the fair value of its membership interest in KKF-LA despite KKF's attempts to withdraw, resign, or disassociate from KKF-LA.

67. As a proximate result of KKF's breach of the New Member Agreement, Jenna has been damaged in a sum to be ascertained according to proof at trial.

## FIFTH CAUSE OF ACTION FOR DECLARATORY RELIEF

68. Plaintiff incorporates herein by reference the allegations set forth in paragraphs 1 through 68 above.

69. A real and justiciable controversy over the terms and effect of the New Member Agreement exists between KKF and Jenna.

70. Jenna seeks a declaration from this Court that:

    a. The New Member Agreement constitutes a valid and enforceable contract between Jenna and KKF;

    b. Jenna is a member of the limited liability company KKF-LA, with all rights and obligations of a member;

    c. Jenna performed or substantially performed its obligations under the New Member Agreement, to the benefit of KKF;

    d. Pursuant to the New Member Agreement and the course of conduct between Jenna and KKF, the term "Los Angeles Territory," as used in the New Member Agreement, includes all geographic territories in which KKF-LA operates and has operated;

    e. The value of KKF-LA is based upon the value of all territories in which KKF-LA operates and has operated;

    f. Having performed its obligations under the New Member Agreement, KKF has no right or ability to unilaterally dissolve the limited liability company KKF-LA;

    g. KKF has no right or ability under the New Member Agreement to terminate Jenna from KKF-LA without complying with its terms and paying fair market value; and

    h. The Non-Competition Provision of the New Member Agreement is unenforceable under California law. *See* Cal. Bus. & Prof. Code §16600.

71. A judgment should be made declaring that the New Member Agreement is as described above.

# PRAYER FOR RELIEF

WHEREFORE, Jenna prays for judgment against the defendants, and each of them, as follows:

1. For damages in sums as are proven at trial;

2. Pursuant to Cal. Bus & Prof. Code §20035, for the fair market value of the franchised business and franchise assets;

3. Pursuant to Cal. Bus & Prof. Code §20035(b), an injunction against the nonrenewal of the franchise;

4. For costs of defense, settlement and judgement, by contract, strategy, agreement and equity;

5. For punitive and exemplary damages as determined by the trier of fact;

6. For a declaration regarding the meaning, enforceability, and effect of the New Member Agreement;

7. For judgment in favor of Plaintiff;

8. For the costs of this action, including reasonable attorneys' fees expended by Plaintiff; and

9. For such other and further relief as the Court may deem just and proper.

# DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury in this matter.

DATED:  November 17, 2020　　　　　RUSS, AUGUST & KABAT
　　　　　　　　　　　　　　　　　　Larry C. Russ
　　　　　　　　　　　　　　　　　　Jules Kabat
　　　　　　　　　　　　　　　　　　Nathan D. Meyer


　　　　　　　　　　　　　　　　　By:  /s/ *Larry C. Russ*
　　　　　　　　　　　　　　　　　　Larry C. Russ
　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff Jenna
　　　　　　　　　　　　　　　　　　Marketing, LLC