UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **KRISPY KRUNCHY FOODS L L C** | **CASE NO.  6:20-CV-01424** |
| **VERSUS** | **JUDGE JAMES D. CAIN, JR.** |
| **JENNA MARKETING L L C** | **MAGISTRATE JUDGE PATRICK J. HANNA** |

### REPORT AND RECOMMENDATION

Before this Court is a motion to transfer venue filed by defendant Jenna Marketing, LLC ("Jenna"). (Rec. Doc. 19). The motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court. Plaintiff Krispy Krunchy Foods, LLC ("KKF") opposed the motion (Rec. Doc. 24) and Jenna replied.  (Rec. Doc. 25).  Considering the evidence, the law, and the arguments of the parties, and for the reasons explained below, this Court recommends that Jenna's motion be DENIED.

### Factual Background

KKF is a Louisiana limited liability company.  Its members are Petron, LLC; Wurster, LLC; NGO Management Co., LLC; DGS, LLC; and AVAGG, LLC.   All

but AVAGG, LLC are Louisiana limited liability companies.[1] These member LLCs feature twenty-three (23) individual members. Of these, fourteen (14) of the twenty-three (23) are domiciled in the State of Louisiana, while nine (9) are domiciled in various other states. (Rec. Doc. 1 at ¶¶ 1-2). KKF's business is the production of quick service food items sold in convenience stores, gas stations and other similar retailers throughout the United States. As succinctly explained by Judge Selna in a related case,[2] KKF creates a network of LLCs comprised of KKF and "Marketing Partners" focused on each geographic territory in which KKF's products are sold. Marketing Partners recruit retail locations to buy the requisite KKF marketing materials and to sell KKF foods. Net profits are distributed between KKF and its Marketing Partners in proportion to each party's ownership percentage within the LLC.[3]

Jenna is a California limited liability company. Its members are Harry Markowitz ("Markowitz") and Tony Thapthimthong, both California domiciliaries. (*Id.* at ¶ 3).

In 2011, KKF and Jenna entered into a New Member Agreement ("Agreement") whereby Jenna became a co-owner with KKF in Krispy Krunchy Foods – Los Angeles, LLC, a Louisiana limited liability company under the

---

[1] AVAGG, LLC is an Illinois limited liability company. (Rec. Doc. 1 at ¶ 1).
[2] *Jenna Marketing, LLC v. Krispy Krunchy Foods, LLC, et al.*, Civ. Act. No. 21-cv-456 (W.D. La.).
[3] *Id.* at Rec. Doc. 20, pp. 1-2.

Marketing Partner model described above.  KFF- Los Angeles' name was later changed to KKF – California. (Rec. Doc. 1 at ¶10).  In exchange for Jenna's 49% membership, Jenna incurred marketing, recruitment and sales obligations further outlined in addenda to the Agreement.  (Rec. Doc. 19-10).  Another Louisiana LLC was created in 2011 by KKF and Jenna, called KKF – Phoenix.  This LLC was registered to operate in the states of Arizona and California.  KFF asserts that no formal New Member Agreement was executed between it and Jenna as to KKF – Phoenix.  (Rec. Doc. 1 at ¶¶ 20-23).

In 2015, KKF sought renegotiation of all contracts with its Marketing Partners.  In March of 2017, Markowitz refused to sign KKF's new proposed contract based on his opinion that it set unfair, unrealistic sales goals and provided KKF with a new avenue to terminate Marketing Partners at will without compensation when they failed to meet these sales goals. (Rec. Doc. 19-11 at ¶¶ 30-32).  Contract negotiations between KKF and Jenna devolved into tense exchanges of threatening emails by 2020.  On November 4, 2020, KKF filed suit in this court against Jenna seeking judicial dissolution of both KKF – California and KKF – Phoenix and declaration that all contracts between KKF and Jenna are terminated as a result of the judicial dissolution of the LLCs.  *(Rec. Doc. 1 at ¶¶ 32, 38).*

Jenna responded by filing its own suit against KKF on November 17, 2020. (Civ. Act. No. 21-CV-456 at Rec. Doc. 1).  Jenna's suit was originally filed in the

3

Central District of California but transferred to the Western District of Louisiana on motion by KKF. Speaking for the transferring court, Judge Selna found that the facts of this case did not warrant application of the "anticipatory suit" exception to the "first-to-file" rule. (Rec. Doc. 20 at pp. 9-10). Citing California jurisprudence, Judge Selna instructed that the first-filed is the proper venue to address motions for transfer. (*Id.* at p. 11). By grant of a joint motion by KKF and Jenna, Jenna's suit was recently consolidated with the instant suit as a member. (*See* Civ. Act. No. 21-CV-456 at Rec. Doc. 39).

Against this factual and procedural backdrop, we now consider the law and argument urged by the parties regarding Jenna's instant motion to transfer.

## **Law and Analysis**

A court may transfer an action to any other proper judicial district "for the convenience of the parties and witnesses, in the interest of justice." 28 U.S.C. §1404(a). The party seeking transfer must show good cause for the transfer. Unless the moving party shows that the transfer is "clearly more convenient," the plaintiff's choice of venue must be respected. *In re Volkswagen of America, Inc.*, 545 F.3d 304, 311 (5th Cir. 2008) ("Volkswagen II").

Courts enjoy broad discretion in considering whether to grant transfer motions but are bound in the exercise of this discretion by the text of § 1404(a). Courts considering transfer motions begin with the threshold inquiry of whether the suit at

issue might have been brought in the venue to which transfer is sought. Transfer of venue pursuant to § 1404(a) is permitted only when this question is answered affirmatively. *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*Volkswagen I*").

After a court assures itself that transfer is possible under the parameters of the statute, it must next evaluate the wisdom of transfer according to the public and private interest factors set forth by the United States Supreme Court in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947). The *Gilbert* Court explained that private interest factors such as: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive are all illustrative factors to be weighed by courts. Similarly, the Court instructed that public interest factors such as: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law are illustrative only. Jurisprudence evolving from *Gilbert* evidences that neither the public, nor the private interest factors are exhaustive and the Fifth Circuit Court of Appeals cautions against engaging in a "raw counting exercise[,]" but rather should engage in true

qualitative analysis of the evidence presented as to each factor. *In re Radmax, Ltd.*, 720 F.3d 285 (5th Cir. 2013); *Volkswagen II*, 545 F.3d at 315 (internal citations omitted).

Turning to the instant case, neither party disputes that KKF's suit could have been brought in the Central District of California. Jenna is a California LLC based in Los Angeles, providing the California district court with personal jurisdiction. As recently noted by this Court, federal subject matter jurisdiction exists pursuant to 28 U.S.C. § 1332 based on diversity jurisdiction. (Rec. Doc. 29). Therefore, this Court that KKF's suit might have properly been filed in the Central District of California, freeing this Court to further consider the prudence of transfer under § 1404(a).

As a preliminary matter, the Agreement at issue between KKF and Jenna does not contain a forum selection clause. Were the Agreement to feature such a clause, our analysis may defer in large part to that prior forum selection by the parties. *Speed v. Omega Protein, Inc.*, 264 F. Supp. 2d 668, 672 (5th Cir. 2003) citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-30 (1988).

Addressing the *Gilbert* private interest factors, we find that the relative ease of access to sources of proof is a neutral factor, since the parties appear to have equal access to sources of proof in each of their states of domicile and because of the role of technology in the storage and transmission of what the court perceives to be largely documentary evidence in this case. *Volkswagen II*, 545 F.3d at 317

(access to sources of proof is relatively easy because of copying technology and the information age). Jenna argues that the majority of evidence will likely come from its own offices but does not specify what format this evidence is in, nor what relevance the unspecified evidence may have to the proceedings. Moreover, Jenna does not describe why any evidence at issue is not susceptible of electronic transmission.   (Rec. Doc. 19-1 at pp. 8-9).

Exhibit "F" to Jenna's motion identifies eighty (80) proposed non-party witnesses located in California, Washington, Nevada, and Oregon as evidence in support of the second private interest factor: availability of compulsory process to secure witness attendance.  (Fed. R. Civ. P. 45; Rec. Doc. 19-9).  As to a portion of these witnesses (33 of the 80 listed) Jenna asserts they will provide important testimony refuting KKF's claims that Jenna breached its contractual obligations under the Agreement.[4]  Given their locations, Jenna claims the Central District of California would have more compulsory process available to it over these witnesses.  KKF claims that Jenna's representation of the relevancy of this great number of potential witnesses is inflated.  This Court finds that both arguments are partially true. Jenna is entitled to produce evidence in the form of relevant witness testimony regarding its conduct under the Agreement and it appears that such

---

[4] This Court will further address the impact of Jenna's failure to address the remaining 47 witness' materiality and relevance in conjunction with other *Gilbert* factors.

7

witnesses will be located in the states within the KKF – Los Angeles territory. The undersigned also agrees, however, that the proposed number of such witnesses, now eighty (80) as represented by Jenna's motion, is excessive and, as evidenced by the descriptions of proposed testimony offered, redundant. Moreover, as pointed out by KKF, even the Central District of California will not have compulsory process over all of the proposed witnesses located in California. We note that Jenna does not delineate which of its potential witnesses from among the eighty (80) listed are willing to appear at trial and which are unwilling and, thus, would require a court's compulsory process.

Additionally, this Court and many others adopted and continue to operate under stringent COVID-19 protocols. Having incorporated new methods of operation with great success, it is the view of the undersigned that, to the extent that use of stipulated deposition testimony at trial is not possible, live testimony by video teleconferencing is now an economical and safe option. Fed. R. Civ. P. 43 permits live testimony by contemporaneous transmission from another location, thereby enabling the use of popular teleconferencing platforms, such as Zoom. The use of this technology may also be a helpful tool in securing testimony by otherwise reluctant witnesses, reducing the need for compulsory process.

Given the availability of technological aides to testimony, we find that this factor is neutral. Although this Court cannot be sure at this point in the case how

many potential witnesses should be characterized as "unwilling," we find that reluctant or unwilling witnesses may offer testimony by stipulated deposition testimony or by video teleconferencing. Finally, it is accurate to say that neither district court may exercise compulsory process over all potential witnesses.

The next private interest factor is the cost of attendance for willing witnesses. As discussed above, Jenna's motion does not provide a credible indication of how many non-party witnesses may actually testify at a potential trial of this case or how many of them may be classified as "willing." The Fifth Circuit has adopted the "100 mile rule" for analysis of this factor. *Volkswagen I*, 371 F.3d at 204-05. Under this rule, if the distance between the proposed and current venue is more than 100 miles, the factor of inconvenience increases in direct relationship to the distance traveled. When the transferee venue is a shorter distance from witnesses than the transferor venue, the factor is deemed to favor transfer. Similarly, this factor is deemed to "favor transfer when a 'substantial number of material witnesses reside in the transferee venue' and no witnesses reside in the transferor venue," no matter whether the transferor venue would be more convenient for all witnesses. *Optimum Power Solutions, LLC v. Apple, Inc.*, 794 F.Supp.2d 696, 701 (E.D.Tex. 2011) (quoting *Genentech*, 566 F.3d at 1344). The distance between the potential venues in this case is 1,766 miles. Thus, the 100 mile rule must be applied.

As the movant, Jenna bears the burden of demonstrating that the transfer of this suit to its proposed venue is clearly more convenient under applicable law and jurisprudence. *Volkswagen II*, 545 F.3d at 315. Jenna's motion does not analyze the likely witnesses as material or relevant in equal or varying degrees, nor does it analyze the relative distances to be traveled by these witnesses as it relates to the prospective venues. As stated above, we do not find Jenna's representation that it will offer eighty (80) witnesses credible or feasible. We note, however, that at this stage of this case Jenna is only required to establish "threshold" relevancy and materiality as to its proposed witnesses. *Fujitsu v. Tellabs, Inc.*, 639 F.Supp.2d 761, 766 (E.D. Tex. 2009) (citing *In re Genentech*, 566 F.3d 1338, 1343 – 44). This Court agrees that, as to 33 of the 80 potential witnesses, Jenna offers a broad threshold relevancy argument. (Rec. Doc. 19-9 at p. 2). The remaining 47 potential witnesses are accompanied by no argument as to relevancy or materiality. (*Id.* at pp. 2-3). Accordingly, only those potential witnesses as to whom Jenna has made a showing of relevancy will be considered. *Fujitsu*, 639 at F.Supp. 2d at 767 (identified witnesses not supported by a showing materiality and relevance are properly excluded from transfer analysis). All of Jenna's properly supported potential witnesses are California residents.

Applying Fifth Circuit jurisprudence, this factor weighs in favor of transfer because of the Central District of California's proximity to all of Jenna's 33

properly designated proposed witnesses is clearly more convenient to these witnesses when compared to the Western District of Louisiana court.

Neither party presented evidence in support of or against the final private interest factor, which regards practical problems that make trial easy, expeditious and inexpensive. As we have mentioned throughout our private interest factor analysis, this Court sees the past year's introduction of increased video teleconference technology to court proceedings as way to make trials less expensive while promoting wider access to witnesses without the need for disruptive travel. We note that, even within California, several witnesses live more than three (3) hours' drive from the proposed transferee venue, making travel to trial a major factor that may require overnight lodging and associated expenses. If the litigants are able to agree to the presentation of witness testimony in this manner, it will further streamline the pretrial process, alleviating the need for arduous pretrial motions regarding evidentiary issues.

Turning now to *Gilbert*'s public interest factors, we begin by considering the administrative difficulties flowing from court congestion. Here, we compare the relative time in which a case may come before the court for trial and be resolved. *In re Genentech*, 566 F.3d 1338, 1347 (Fed. Cir. 2009). In other words, where may the case reach trial the fastest? Jenna offers no evidence that the average time a case awaits trial in the Central District of California is greater or less than that of a

case awaiting trial before this Court. This Court's own research shows the median time between the filing of suit and disposition of a case by trial in the Western District of Louisiana is 27.1 months, while only 23 months in the Central District of California.[5] Thus, this case can be expected to be resolved an average of four (4) months earlier if tried in the Central District of California, indicating that this factor weighs in favor of transfer.

The second public interest factor is the local interest in having localized interests decided at home. Both Jenna and KKF argue strenuously that their preferred venues have overwhelming local interest in having the issues of this case tried locally. KKF's complaint alleges that it received complaints from "one of [its] major, national customers" regarding Markowitz. Further, KKF claims that it investigated the complaints and determined them to be "well-founded." KKF's attempt to dissolve KKF – California and KKF – Phoenix is, therefore, an attempt to end its contracts with Jenna based on its failure to reach amicable new terms during its contract renegotiations and, it appears, due to allegations of breach of contract by Markowitz in his conduct on behalf of Jenna as a Marketing Partner. Accordingly, this suit involves both California and Louisiana issues of law, as the prevailing venue will apply California law to Jenna's claims of breach of

---

[5] https://www.uscourts.gov/statistics/table/c-5/federal-judicial-caseload-statistics/2020/03/31

California's Franchise Investment Law,[6] California's Franchise Relations Law,[7] KKF's alleged breach of contract and fiduciary duty, as well as Louisiana law of LLCs[8] to all KKF's obligations.  We note here that despite KKF's claim for dissolution of what KKF purports to be an oral membership agreement KKF - Phoenix, neither party specifies whether Arizona or California law should be applied to this claim.  We assume without deciding that California law would apply to such an agreement, given Jenna and KKF's prior dealings.  In this Court's view, this factor is neutral, as each court clearly has an interest in deciding the respective issues of law according to its own law and, no matter which venue is selected, each court must apply foreign law to at least one issue before it.  As a neutral factor, this factor does not favor transfer.

The next factor asks the court to consider the familiarity of each court with the law that will govern the case.  While, as discussed above, each court will be asked to apply law with which it may be unfamiliar, we find that this factor weighs against transfer, as the California court will be asked to apply Louisiana's law governing LLCs across all of the claims and defenses asserted, while this Court will only be asked to apply the unfamiliar California law as to the issues of

---

[6] Cal. Corp. Code § 31000, *et seq.* (Civ. Act. 21-cv-456 at Rec. Doc. 1).
[7] Cal. Bus. & Prof. Code § 20000, *et seq.* (Civ. Act. No. 21-cv-456 at Doc. 1).
[8] La. R.S. § 12:1301, *et seq.*

13

franchise and non-competition. Relatively, this Court is more familiar with the law to be applied.

Finally, neither party submitted evidence regarding the avoidance of unnecessary problems of conflict of laws or in the application of foreign law. This Court is not independently aware of any issues arising under this factor and, therefore, finds that this factor does not support transfer.

## Conclusion

Having evaluated the case at bar according to the public and private interest factors set forth in *Gilbert*, this Court concludes that only two (2) of the eight (8) total factors weigh in favor of transfer. As the movant, Jenna has not borne its burden of showing that transfer is "clearly more convenient" in this case pursuant to § 1404(a). Accordingly, for the reasons more fully discussed herein, it is the recommendation of this Court that Jenna's instant motion to transfer (R. 19) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 16th day of April, 2021.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE