# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## LAFAYETTE DIVISION

**KRISPY KRUNCHY FOODS L L C**　　　　**CASE NO.  6:20-CV-01424 LEAD**

**VERSUS**　　　　　　　　　　　　　　**JUDGE JAMES D. CAIN, JR.**

**JENNA MARKETING L L C**　　　　　　**MAGISTRATE JUDGE PATRICK J. HANNA**

## MEMORANDUM RULING

Before the Court is "Defendants' Rule 12(B)(6) Motion to Dismiss" (Doc. 73) wherein Defendants Jenna Marketing, LLC ("Jenna"), Chicken King LLC ("Chicken King") and Harry Markowitz ("Markowitz") who in their capacity in the lead case (Civil Action 6:20-1424) move pursuant to dismiss Counts Three, Five, Six, and Seven of the First Supplemental, Amended, and Restated Complaint, ("FAC") of Plaintiff and Consolidated Defendant Krispy Krunchy Foods, LLC ("KKF").

## BACKGROUND

In their FAC, KKF alleges the following: In 1999, KKF started out as a small Louisiana fried chicken company that solely owns the Krispy Krunchy® Brand.[1] KKF developed, owns, and licenses a quick-service fried chicken concept to convenience stores, gas stations, and similar retail outlets.[2] Sometime afterwards,[3] KKF entered into open-ended contractual relationships with third-party sales representatives hired to sell the Krispy Krunchy® fried chicken program to retailers.  KKF and Jenna commenced their

---

[1] FAC, ¶ ¶ 9–10.
[2] *Id.* ¶ 11.
[3] Approximately ten years prior to the filing of this lawsuit.

relationship in 2011; KKF alleges that this relationship has declined in recent years, resulting in the termination of the business relationship.[4] The instant lawsuit was initially filed to seek a judicial dissolution and a declaratory judgment about the Agreement[5] between the parties.[6]

Since 2011 Jenna has expanded the scope of its operations in the states of California, Arizona, Oregon, Washington and Nevada.[7]  KKF alleges that after extensive and lengthy negotiations, KKF concluded that it is not possible to reach an amicable agreement to continue operating KKF-California under terms acceptable to both members.[8]

Specifically, KKF alleges that it received complaints from one of its major, national customers about Jenna's sales representatives, Harry Markowitz and Scott Markowitz.[9] The customer considered terminating its relationship unless Markowitz was removed.[10] The customer's complaint prompted an investigation, after which KKF concluded that the complaint was well founded and terminating its business relationship with Jenna and Markowitz was essential to the health of its business, reputation and future operations.

KKF seeks judicial resolution of two limited liability companies—Krispy Krunchy Foods- Phoenix, L.L.C. ("KKF-Phoenix") and Krispy Krunchy Foods, -Los Angeles, L.L.C. ("KKF-California"). Both companies were formed through the Secretary of State in

---

[4] *Id.* ¶ ¶ 12–14.
[5] Agreement and Consent to Admission of Assignee Jenna Marketing, LLC, as a New Member. *Id.* ¶ 20.
[6] *Id.* ¶ 15.
[7] *Id.* ¶ 21.
[8] *Id.*, ¶ 24.
[9] *Id.* ¶ ¶ 22 and 25.
[10] *Id.*

Louisiana.[11] KKF terminated Jenna's right to represent the Krispy Krunchy® brand, effective September 21, 2021.[12]

## RULE 12(b)(6) STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows dismissal of a complaint when it fails to state a claim upon which relief can be granted.  The test for determining the sufficiency of a complaint under Rule 12(b)(6) is that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977) (per curium) citing *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99 (1957).

Subsumed within the rigorous standard of the *Conley* test is the requirement that the plaintiff's complaint be stated with enough clarity to enable a court or an opposing party to determine whether a claim is sufficiently alleged. *Elliot v. Foufas*, 867 F.2d 877, 880 (5th Cir. 1989).  The plaintiff's complaint is to be construed in a light most favorable to plaintiff, and the allegations contained therein are to be taken as true. *Oppenheimer v. Prudential Securities, Inc.*, 94 F.3d 189, 194 (5th Cir. 1996). In other words, a motion to dismiss an action for failure to state a claim "admits the facts alleged in the complaint, but challenges plaintiff's rights to relief based upon those facts." *Tel-Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1137 (5th Cir. 1992).

---

[11] *Id.* ¶ ¶ 16 and 27.
[12] *Id.* ¶ 41.

"In order to avoid dismissal for failure to state a claim, a plaintiff must plead specific facts, not mere conclusory allegations . . ." *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992).  "Legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."  *Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995). "[T]he complaint must contain either direct allegations on every material point necessary to sustain a recovery . . . or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." *Campbell v. City of San Antonio*, 43 F.3d 973, 975 (5th Cir. 1995).

Under Rule 8 of the Federal Rules of Civil Procedure, the pleading standard does not require a complaint to contain "detailed factual allegations," but it "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007).  A complaint that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*  Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.*, at 557, 127 S.Ct. 1955.

To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.*, at 570, 127 S.Ct. 1955.

## <u>LAW AND ANALYSIS</u>

Defendant moves to dismiss Counts Three, Five, Six, and Seven of the FAC on the grounds that KKF has failed to state a claim upon which relief can be granted.

*Breach of contract (Count Three)*

In it FAC, KKF alleges that pursuant to the Agreement Jenna agreed to assume certain duties and obligations, including but not limited to: (i) training new and existing customers; (ii) providing support for new customers; (iii) seeking increased sales and product usage by existing customers; (iv) promoting goodwill with existing customers; (v) performing tasks required by KKF's sales program; (vi) complying with KKF's business and accounting practices, and (vii) complying with the non-competition provisions.[13]

Defendants contend that KKF has failed to allege any facts to support any breach of contract claim.  KKF asserts that the FAC alleges that despite KKF informing Jenna on several occasions that its sales program required that a Jenna representative visit every store selling Krispy Krunchy Chicken® at least one time every month, yet Jenna failed to perform this task for over a year.[14]

KKF contends that despite KKF preparing Jenna with the ability to perform its training obligation to KKF customer stores, KKF was informed of numerous occasions that Jenna failed to provide necessary training to both new and existing customers.[15] KKF alleges that Jenna failed to provide sufficient equipment in the stores that it serviced despite the fact that the Agreement required that Jenna provide sufficient equipment to allow the program to run smoothly.[16]

---

[13] FAC. ¶ 51.
[14] *Id.* ¶ 52.
[15] *Id.* ¶ 53.
[16] *Id.* ¶ 54.

Finally, KKF alleges that Jenna's marketing efforts with at least three customers failed to comply with several of its obligations under the Agreement such as (i) failing to promote KKF's sales programs; (ii) failing to comply with KKF's explicit instructions on how to interact with customers; and (iii) providing such poor service that customers refused to continue working with Jenna.[17]

Defendants argue that KKF's allegations are too conclusory to withstand Rule 12(B)(6).  Specifically, Defendants complain that the KKF fails to allege (1) what equipment and in which store said equipment was not provided, (2) what training did Jenna fail to provide and what customer, (3) how Jenna failed to promote KKF's sales programs, instructions for interaction with customers, and provided poor service, and to which customers.

The Court agrees with Defendants that KKF's complaint fails to provide detailed facts of all of the alleged breaches of the agreement.  *See Dignam v. Chumley,* 2014 WL 3542122, at *3 (W.D. L. July 17, 2014) (district court dismisses breach of contract claim under Rule 12(b)(6) because plaintiff "failed to plead any specific facts about the contract, other than the parties to the contract and the date of formation.")  However, KKF has alleged enough facts as to some of the alleged breaches to avert a dismissal at this time. Construing the complaint in a light most favorable to KKF, the Court will allow KKF to amend its complaint to address the Defendant's and the Court's concerns and allege detailed facts as to each of the alleged breaches.

---

[17] *Id.* ¶ 55.

*Lanham Act Violations (Counts Five, Six, and Seven)*

Defendants argue that its use of the KKF Marks was neither deceptive nor misleading, therefore Defendants cannot support a claim for violation of the Lanham Act. Defendants assert that the Lanham Act claims allegedly arise from two distinct but related set of facts: (1) actions taken by Defendants before the Agreement was terminated by KKF on September 21, 2021, and (2) Defendants' inactivity after September 21, 2021, by not removing the KKF Marks from its pre-termination social media posts.

"The Lanham Act was intended to make 'actionable the deceptive misleading use of marks,' and 'to protect persons engaged in . . . commerce against unfair competition." *Thousand Island Corporation v. Welser,* 315 F.Supp.3d 391, 396 (N.D.N.Y.) (*quoting Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 28-29(2003)). A claimant bringing a Lanham Act claim must plead that the defendant's use of a trademark "creates a likelihood of confusion as to source, affiliation, or sponsorship."  *Nola Spice Designs, LLC v. Haydal Enterprises, Inc.*, 783 F.3d 527, 536-37 (5th Cir. 2015) (*quoting Nat'l Bus. Gorms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526, 532 (5th Ci. 2012); 15 U.S.C. § 1114(1)).

Defendants suggest that because KKF authorized the use of the KKF Marks, including KKF Marks on the Chicken King food truck and social media prior to termination of the Agreement, then Defendant's conduct was neither deceptive, misleading, nor unfair and therefore is not an infringement. Defendants argue that the Lanham Act does not require an affirmative "duty to scrub" or remove any and all uses of a trademark from social

media.  In other words, Defendants maintains that the Act does not require it to remove past social media posts.

In addition, Defendants assert that the Agreement does not require Defendants to remove or delete any and all uses of a trademark from the Internet, or anywhere else, once the license is terminated. Defendants rely on *Thousand Island*, *supra*, to support their contention that the Lanham Act does not provide an affirmative duty to remove media posts.

In *Thousand Island*, the owner of "The Guzzle" restaurant brought a breach of contract and trademark infringement claim against its former manager based on two Facebook posts using The Guzzle Mark prior to termination of the parties employment agreement.  *Thousand Island Park Corp.*, 314 F.Supp.3d at 399. The first Facebook post thanked the prior years' patrons and stated hopes of seeing them the following year. *Id.* The second Facebook offered to sell memorabilia which incorporated The Guzzle Mark. *Id.* The manager was served a cease-and-desist letter alleging his social media posts amounted to trademark infringement. *Id.*

The district court dismissed the trademark claims, remarking that "courts have repeatedly cautioned against permitting parties to misuse the Lanham Act by making a federal case out of an otherwise garden-variety contract dispute."  *Id.* at 398. The court found that there was no likelihood of consumer confusion and thus no infringement.  The court specifically found that both social media posts were made before the restaurant terminated the manager's agreement. The agreement authorized the manager to advertise The Guzzle and the social media posts looked backward to the time that the agreement

existed. The court concluded that the mere fact of the existence of the pre-termination Facebook post offering goods bearing the Guzzle Mark did not provide "any plausible factual basis on which to infer that [the manager] offered for sale any merchandise beyond the January 4 termination date." *Id.*at 399. The district court found that these actions did not rise to the level of a plausible Lanham Act claim noting that the assertion that [the manager] might still be up to no good, was conclusory. Here, Defendants posit that because the social media posts were authorized at the time they were posted, and prior to the Agreement being terminated, the Lanham Act does not provide any affirmative duty to remove the poses.  Defendants also assert that the bulk of the posts advertise specific events which pre-date the termination, and KKF has offered no plausible factual basis to infer the Defendants advertised or sold goods bearing the KKF Marks since the termination of the Agreement.

Defendants argue that KKF's allegations of post-termination use of the KKF Marks are conclusory, made on information and belief, and are without any factual basis. Defendants request that the Court strike paragraphs 90-91, 93-95, and 97-99 of the FAC should the Court choose to consider KKF's "conclusory and unsupported allegations on information and belief that Defendant continued to use the KKF Marks"[18] after termination of the Agreement.

Additionally, Defendants contend that KKF has failed to allege Lanham Act violations because Defendants have not alleged a wrongful use. 15 U.S.C. § 1114 bars "use

---

[18] Plaintiff's Motion to Dismiss, p. 12, Doc. 73-1.

in commerce . . in connection with the sale, offering for sale, distribution, or advertising of . . . goods or services, . . ."  (Count Five) Defendant assert that after September 21, 2021, there was no "use" of the KKF Marks, and earlier uses were authorized.  Thus, there was no affirmative "use" alleged that would have violated § 1114.

Defendants also contend that 15 U.S.C. § 1125 bars one who "uses in commerce" during the relevant term.  15 U.S.C. § 1125 (a)(1) (Count Six), but no unauthorized "use" is alleged. Again, Defendant contend that KKF fails to allege that their use of the KKF Mark was wrongful since it was authorized.

KKF asserts that Defendant have continued to engage in federal trademark infringement and in unfair competition, including activities of Roaming Hunger, Inc for contributory trademark infringement.  First, KKF asserts Defendants do not have standing to seek the dismissal of a claim directed to another defendant. KKF argues that it has made more than 50 paragraphs of specific allegations, and suggest that the Court consider the wealth of detail in those paragraphs, and acknowledge that KKF is not required to provide further details at this point, and deny Defendants' motion in its entirety.

KKF agrees that Jenna and Markowitz were licensed to market KKF-branded products[19] prior to September 21, 2021, but argues that this fact alone does not permit Jenna, Markowitz, or Chicken King, the right to use KKF's trademark and trade dress in perpetuity, especially since those rights were explicitly terminated by KKF. KKF remarks that it asserted its right to control how its trademarks and trade dress could be used and

---

[19] Chicken King was also authorized to sell KKF-branded products through its food truck.

specifically instructed Defendants to stop using them.[20]  KKF has alleged that Defendants continue to use the KKF Mark three months after termination of the Agreement.

KKF maintains that the Lanham Act forbids use of the KKF Mark in commerce.  15 U.S.C. § 1114.[21] KKF remarks that Chicken King place KKF's trademarks (prior to termination of the Agreement) on its social media pages to generate business and attention. KKF remarks that Chicken King did not remove the posts either after the termination letter, nor after the cease-and- desist letter, nor after the lawsuit was filed.  Therefore, KKF maintains that Defendants continue to infringe on KKF's trademark and trade dress rights and is asking this Court to excuse that infringement.

KKF informs the Court that Chicken King is aware that its use of the KKF Mark is an infringement because it went to the trouble and expense of having its food truck re-skinned in order to avoid infringing on KKF's trademarks and trade dress. KKF also notes that its statements that "trademark law does not create a standalone affirmative duty to scrub old social media," is unsupported by statute, regulation, or rule. KKF cites numerous cases wherein courts have entered preliminary injunctions requiring offenders to "scrub" or remove social media pages/posts. *See Music with Mar, LLC v. Mr. Froggy's Friends & Katrina Webster*, 2021 U.S.Dist. LEXIS 138925, 2021 WL 2964234 (M.D. Fla. 6/30/21); *Oakwood University, Inc. v. Oakwood University Alumni Association*, 2020 U.S.Dist.

---

[20] FAC, ¶ 95.
[21] (1)      Any person who shall, without the consent of the registrant—

   (a) Use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of ay goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive. . . .
   Shall be liable in a civil action by the registrant for the remedies hereinafter provided.

LEXIS 146809, 2020 WL 4732074 (N.D. Ala. 8/14/20); *Aquavit Pharmaceuticals, Inc. v. U-Bio-Med. Inc.*, 2020 U.S. Dist. LEXIS 68438, 2020 WL 1900502 (S.D. N.Y. 4/17/2020); *Chanel, Inc. v. Charles*, 2016 U.S.Dist. LEXIS 114220 (N.D. Cal. 6/9/16).

KKF argues that the jurisprudence reflects that advertising efforts on social media must comply with the Lanham Act, even if those efforts began before the licensor/licensee relationship fell apart. KKF further contends that Defendant's reliance on *Thousand Island* is misplaced. First KKF notes that in *Thousand Island,* the court rejected the infringement claim because the plaintiff's argument was made in a footnote without any supporting case law. Furthermore, the defendant in *Thousand Island* did not begin running a business in direct competition with the trademark owner, after the contract with the trademark owner was terminated. In *Thousand Island*, the alleged offender was attempting to sell merchandise left over from his year of operating the restaurant—products the restaurant owner never used or licensed its trademark.

Here, Defendant's social media posts use KKF's trademarks without authorization and in direct competition with KKF and its licenses which is likely to cause consumer confusion as to the source, sponsorship, or approval of Defendants' products. Specifically, KKF has alleged facts to show that Defendants have been infringing on KKF's trademarks after the license was revoked.  KKF alleges that Chicken King has Facebook and Instagram accounts that continue to display advertising for its food products and food truck services using KKF's trademarks.[22] Chicken King's page on the Roaming Hunger website contains

---

[22] FAC, ¶ 97.

KKF's trademark.[23] Markowitz, on behalf of Jenna and/or Chicken King has used and continues to provide catering services using the Chicken King food truck, which displays KKF's registered and unregistered trademarks.[24] KKF alleges that it did not authorize the use of KKF's trademarks in connection with Defendants' catering services.

In order to assert a federal claim for trademark infringement, a plaintiff must assert that: (1) it possesses a legally protectable trademark and (2) the defendants' use of this trademark creates a likelihood of confusion as to source, affiliation, or sponsorship. *Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*, 2021 U.S. App. LEXIS 23761, at *6 (5th Cir. 8/10/21), *citing Streamline Production Systems, Inc. v. Streamline Manufacturing, Inc.*, 851 F.3d 440, 450 (5th Cir. 2017).

To assert a federal claim for federal unfair competition, a plaintiff need merely assert the same facts as would support a claim for federal trademark infringement. *Snowizard, Inc. v. Robinson,* 2011 U.S.Dist. LEXIS 73833, *22 (E.D. La. 7/8/11) *citing Boston Professional Hockey Association v. Dallas Cap & Emblem Manufacturing Company*, 510 F.2d 1004, 1010 (5th Cir. 1975).

To assert a federal contributory trademark infringement claim, a plaintiff needs to assert that (a) direct trademark infringement has occurred, and (b) a third party (Roaming Hunger, Inc.) with knowledge of that infringement contributed materially to the direct infringement. *La. Newpack Shrimp, Inc. v. Indigo Seafood Partners, Inc.*, 2021 U.S.Dist. LEXIS 147623, *63 (E.D. La. 8/6/21) *citing Threadgill v. Orleans Parish School Board*,

---

[23]*Id.* ¶ 99.
[24] *Id.* ¶¶ 90–93, 96–100.

2013 U.S.Dist. LEXIS 122664, 2013 WL 4591402 (E.D. La. 8/28/13); *Alcatel USA, Inc. v. DGI Technologies, Inc.*, 166 F.3d 772, 791 (5th Cir. 1999).

Defendants argue that removing old social media posts after termination is a matter of contract, not trademark law, and as noted herein, the Agreement was silent as to any affirmative duty to remove social media posts. Defendants further note that the cases cited by KKF involved removing infringing material that was created either after termination or in the absence of a license.

The purpose of the Lanham Act is to protect the trademark owner.  There is an infringement when the defendants' use of this trademark creates a likelihood of confusion as to source, affiliation, or sponsorship. The Court is not persuaded by Defendants' argument that just because they had authorization when the social media posts were made, that they are forever clothed with immunity and thus allowed to continue to display the trademark material via the internet in connection with their competing businesses. Defendants' continued display of KKF's trademark on their social media pages not only creates confusion as to the source and affiliation, but it affords no protection to the trademark owner. The Court finds that the FAC alleges sufficient facts concerning the continued display of the social media posts in connection with the advertisement and sale of food products after the Agreement was terminated which could constitute a trademark infringement.

## <u>CONCLUSION</u>

For the reasons set forth above, Defendants' Motion to Dismiss will be denied, and Plaintiff will be allowed 30 days to amend its complaint concerning its breach of contract claims.

**THUS DONE AND SIGNED** in Chambers on this 6th day of April, 2022.

**JAMES D. CAIN, JR.**
**UNITED STATES DISTRICT JUDGE**